In the Matter of Leonard Berman, as Commissioner of Social Services of Westchester County (on Behalf of Becky A. H. [Anonymous]), Respondent. Helen H. (Anonymous), Appellant.

Second Department, November 10, 1975

*Alfred Besunder (Franklyn J. Engel* and *David L. Baltch* of counsel), for appellant.

*Gerald Harris, County Attorney (Jonathan Lovett* of counsel), for respondent.

Shapiro, J. This is an appeal by the mentally ill natural mother of the infant Becky A. H. (Anonymous) from an order of the Family Court, Westchester County, entered pursuant to subdivision 7 of section 384 of the Social Services Law, which order gave custody and guardianship of the person of Becky, as a destitute or dependent child, to the Commissioner of Social Services of Westchester County, an authorized agency, with power to consent to her adoption. The questions to be determined on this appeal are (1) whether the Family Court may, under the above-mentioned statute, authorize the giving of the child for adoption notwithstanding the fact that the mother refuses to consent thereto and (2) if it may, whether the statute, insofar as it permits the commitment of the guardianship and custody to an authorized agency for the purpose of adoption of a child of a parent disabled by mental

illness while not allowing it in the case of a parent disabled by physical illness, violates the equal protection requirement of the Fourteenth Amendment of the Constitution of the United States.

Although, in my opinion, there is some question whether the language of the statute, viewed in the abstract, authorizes the Family Court to award guardianship and custody of such a child to an authorized agency for the purpose of adoption when the mentally ill parent refuses to consent to the child's adoption, that question must be resolved in favor of such authority in view of the legislative history of subdivision 7 of section 384 of the Social Services Law. The legislative purpose of the amendment adding subdivision 7 (L 1973, ch 863), as it appears in the 1973 New York State Legislative Annual (pp 199–200), is as follows:

"What is now proposed is a way to terminate the parent's rights, so that the child may be adopted, when the parent, due to mental illness, has been unable over a long period of time to care for the child and is likely to continue to be so unable because of continued mental illness. The revision of Social Welfare Law Section 384 (6) and addition of a new 384 (7) is designed to provide a means to do just this. It makes possible the termination, by Family Court, of parental rights of a parent who:

"1) Has been unable for one year, due to mental illness, to care for the child;

"Many children, whose parents have been unable to care for them, visit them, plan for them, or in any way maintain a relationship with them, will be enabled to achieve permanency through adoption. This will assure them of the stability which foster care can never guarantee and which is needed by every child, perhaps most of all those with a family history of mental illness."

This statement of legislative purpose also notes that in the case of such a child whose adoption is arranged by the authorized agency an average saving of $3,000 per year can accrue to the State.

Hence it is clear that by subdivision 7 (par [a]) the Legislature intended to empower the Family Court to terminate the parental rights of a mentally ill parent by allowing an autho-

rized agency which has had the care of a destitute or dependent child for not less than one year immediately prior to the institution of a proceeding, to arrange for the adoption of the child if the parent has been unable, by reason of said mental illness, presently and for the foreseeable future to provide proper and adequate care.

The constitutional argument based on denial of equal protection lacks merit. As the court noted in *Matter of Abrams v Bronstein* (33 NY2d 488, 492–493): "Of course, not every difference in treatment violates the equal protection guarantee. As formulated in a recent Supreme Court decision, the traditional test for a denial of equal protection under State law is 'whether the challenged classification rests on grounds wholly irrelevant to the achievement of a valid state objective.' * * * To apply this test we must, as an initial step, ascertain both the basis of the classification involved and the governmental objective purportedly advanced by the classification. The classification must then be compared to the objective to determine whether the classification rests 'upon some ground of difference having a fair and substantial relation' to the object for which it is proposed."

The governmental objective sought to be achieved by subdivision 7 is the promotion of the welfare of children and the conservation of State funds, as is evidenced by the statement of the Legislature's purpose in adding that subdivision to the law. The omission of the Legislature to make provision for the adoption of destitute or dependent children of physically ill parents, while making such a provision for children of mentally ill parents, does not invalidate the statute under the equal protection clause for, as the court noted in *Williamson v Lee Optical Co.* (348 US 483, 489): "The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. * * * Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. * * * The legislature may select one phase of one field and apply a remedy there, neglecting the others."

In *Mildner v Gulotta,* decided on October 9, 1975 by a three-Judge District Court in the Eastern District of New York (74 C 1101), Judge NEAHER, in an opinion in which Judge MOORE concurred and which dealt with the question of equal protec-

tion of the law, used language appropriate to the situation here present. He there said: "Thus there is no equal protection problem when the denial of appellate rights to attorneys to the same extent afforded other professionals or litigants is reasonable, resting 'upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" He then added: "While the plaintiffs have made much of the unfairness of this approach as opposed to the arguable wisdom of some procedure that would afford a fuller appellate review, the Equal Protection Clause was not meant to strike down legislative classifications that are merely unwise, improvident or capable of improvement."

The order appealed from should therefore be affirmed, without costs.

RABIN, Acting P. J., HOPKINS, CHRIST and MUNDER, JJ., concur.

Order of the Family Court, Westchester County, dated February 13, 1975, affirmed, without costs.