OPINION OF THE COURT
Kevin C. Fogarty, J.
This is a proceeding commenced pursuant to section 384-b (subd 4, pars [b], [c], [d]) of the Social Services Law to transfer custody and guardianship of the respondents’ children, Judy Gross, born on September 17, 1965, and Donald Gross, born on *1075 December 26, 1968, to the petitioner for the purpose of freeing them for adoption.
In January, 1970, a neglect petition was filed in Kings County against the respondents by the children’s aunt, Benjamin Gross’ sister. Proceedings were had on the neglect petition and under an order of disposition of the Kings County Family Court dated February 18, 1970 said children were discharged to the custody of the petitioner.
Judy and Donald were placed with the petitioner for the purposes of foster care. Judy has continuously resided in the Porter foster home since April, 1970; Donald has continuously resided in the Lee foster home since the same time.
Pursuant to section 392 of the Social Services Law, Kings County Family Court retained continuing jurisdiction of the children and periodic review was had on a yearly basis. Placement was extended in each instance.
On June 7, 1978, the petitioner agency filed a petition to free Judy and Donald for adoption. The petition alleged that the guardianship and custody of said children should be committed to the petitioner on the grounds of abandonment, permanent neglect, and mental illness or mental retardation. Once the respondents’ parental rights were terminated, the petitioner would be able to find permanent homes for the subject children through adoption.
A burden of constitutional magnitude is placed on one who would terminate the rights of the natural parents through adoption. (Matter of Corey L v Martin L, 45 NY2d 383, 386-387.) The petitioner has not satisfied such a burden on the ground of abandonment. Nor has the petitioner made a satisfactory showing for a finding of permanent neglect.
It is relevant to observe with respect to both the ground of permanent neglect and the ground of mental retardation that the respondents in this proceeding are obviously very "limited.”
Benjamin Gross has been evaluated as "dull normal” intelligence having a full scale I.Q. of 81 on the WAIS. The diagnostic impression is of inadequate personality with depressive and borderline feature 301.82.
Rhoda Gross is diagnosed as mild mental retardation, probably associated with an underlying chronic organic brain syndrome 310.9 and latent schizophrenia 295.5. She shows a thinking disorder marked by loosened associations, tangen *1076 tially and circumstantially. She appears an immature and suspicious woman who is passive and dependent.
The ground of mental illness or mental retardation found in section 384-b (subd 4, par [c]) of the Social Services Law is a far more difficult question. Because of the difference in the nature of the relationship in this case between the parents and each child, the question of termination of parental rights as to Judy and Donald will be considered separately.
The question of whether the respondents’ parental rights can be terminated due to mental illness or mental retardation need not be reached as to Judy. Unlike section 384-b (subd 4, par [d]) of the Social Services Law which refers to the ground of permanent neglect for termination, section 384-b (subd 4, par [c]) also concerns itself with consent to the adoption of the child. Although the statute deals with the parent or parents whose consent to the adoption would otherwise be required by section 111 of the Domestic Relations Law, the reference to section 111 results in a broader consent requirement than detailed in section 384-b (subd 4, par [c]) of the Social Services Law.
The very first requirement of section 111 of the Domestic Relations Law is the "consent” of the adoptive child, if over 14 years of age. (Domestic Relations Law, § 111, subd 1, par [a].) Judy turned 14 in September, 1979 and, therefore, her consent is required before an adoption can take place.
In the opinion of the court, such consent would not be forthcoming. In a letter to this court (which was not received into evidence), Judy explained that she did not want to be adopted by anybody because she has a mother and a father. Judy is old enough to know and love her parents. In addition, she understands that they are handicapped and presently unable to take care of her. Therefore, termination of the respondents’ parental rights in order to free Judy for adoption would be futile since Judy would not consent to the adoption, and the court pursuant to section 384-b (subd 3, par [k]) of the Social Services Law may in this limited area consider the wishes of the child in determining whether the best interests of the child would be promoted by the commitment of guardianship and custody of the child.
Entirely apart from the absence of the essential of "consent” from Judy, this court concludes that termination of parental rights because of mental illness or mental retardation is not warranted in the case of both children.
*1077 Ordinarily a trial court will avoid considering constitutional issues where the issues can be determined on alternative grounds. Such a constitutional issue is, however, raised here and requires consideration.
In Matter of Berman (Becky A. H.) (49 AD2d 327), the Second Department held that an attack on the constitutionality of subdivision 7 of section 384 of the Social Welfare Law (predecessor to Social Services Law, § 384-b, subd 4) on equal protection grounds lacks merit. That court found that the statute, insofar as it permits the commitment of the guardianship and custody to an authorized agency for the purpose of adoption of a child of a parent disabled by mental illness while not allowing it in case of a parent disabled by physical illness, does not violate the equal protection requirement of the Fourteenth Amendment to the Constitution of the United States. As applied to parents mentally disabled, that court found a basic difference from parents physically disabled— such difference having a fair and substantial relationship to the history and objective of the statute (Social Welfare Law, § 384, subd 7 [now Social Services Law, § 384-b, subd 4, par (c)]).
However, recent decisions, in this court’s opinion, establish that the present section 384-b (subd 4, par [c]) of the Social Services Law is in conflict with the equal protection clause. Over recent years, the United States Supreme Court has evolved several newer and stricter tests for determining whether a State statute is in conflict with the equal protection clause. Among these is the strict scrutiny test where fundamental rights are concerned.
Fundamental rights have often been enumerated to include rights of a uniquely private nature (Roe v Wade, 410 US 113; Bullock v Carter, 405 US 134 [right to vote]; Shapiro v Thompson, 394 US 618 [right of interstate travel]) and rights guaranteed by the First Amendment (Williams v Rhodes, 393 US 23; Massachusetts Bd. of Retirement v Murgia, 427 US 307, 312). Parental rights also fall within the category of fundamental rights. (Pierce v Society of Sisters, 268 US 510, 535.) By interposing itself between parent and child, the State not only involves itself in one of the most delicate of societal relationships, but also treads on sensitive constitutional ground. (Matter of Leon RR, 48 NY2d 117, 124.)
Hence, where fundamental rights are involved, this court must subject the statute in question to strict scrutiny and find *1078 a compelling State interest for upholding the statute. (San Antonio School Dist. v Rodriguez, 411 US 1, 16.) This strict scrutiny test requires more of a court than the traditional test which merely requires a court to find that the statute has a rational relationship to a legitimate State purpose. (Turner v Fouche, 396 US 346, 362.)
This court believes that, as applied in this case, section 384-b (subd 4, par [c]) of the Social Services Law cannot survive a strict scrutiny test. The Second Department in Matter of Berman (Becky A. H.) (49 AD2d 327, supra), in applying a rational relationship test to the predecessor statute, found such a relationship in the promotion of the welfare of children of mentally ill parents and the conservation of State funds. Neither of these objectives is present in this case nor can these be rationally applied.
The idea that adoption of children in foster care invariably promotes their welfare and best interests is simply not true. (Matter of Denlow, 87 Misc 2d 410.) In fact, in the instant case, Dr. Jerome Kessel, the psychiatrist who examined the respondents Judy, Donald, and their foster parents, recommended a continuation of the current foster care arrangements rather than termination of the respondents’ parental rights in order to free Judy and Donald for adoption.
As applied to the instant case, neither of the two legislative purposes found to exist in Matter of Berman (Becky A. H.) (supra), are present in this case. The first legislative purpose, the welfare of the children would not be affected no matter what decision the court reaches. Neither of the foster parents with whom these children have lived for the almost 10 years is willing to adopt them. In addition, as has already been stated, Judy, who is 14, will not consent to her adoption.
The objective of the conservation of State funds also cannot be accomplished. The children must continue in foster care at State expense. As noted, Dr. Kessel, the psychiatrist, who examined both the respondents and their children, recommends a continuation of the current foster care arrangement rather than termination of the respondents’ rights. "Removal from a long term home would be difficult for relatively healthy children, and it would be much more traumatic for Judy and Donald, given their neurological and emotional problems,” he observed.
The Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in *1079 general, and of the due process clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less and perhaps more than mediocre ones. (Stanley v Illinois, 405 US 645.)
The court believes that the statute in issue is fundamentally defective.
The loss of a child is "as onerous a penalty as the deprivation of the parents’ freedom.” (Department of Public Welfare v J. K. B., 393 NE2d 406, 407.)
In Powell v Texas (392 US 514), the issue was whether a State could constitutionally impose a criminal penalty for public drunkenness. While a plurality held that Robinson v California (370 US 660) protected a person who suffered from a disease but did not prevent punishment for criminal acts, a majority of the Supreme Court agreed that it was unconstitutional to punish conduct arising from a disease. In Robinson v California (supra, at p 666), the Supreme Court in its discussion specifically analogized mental illness with alcoholic addiction in invalidating a statute which provided criminal penalties for mere status. The court suggested that a State might deal with such human afflictions by compulsory treatment but could not consider the status itself an offense. "It is unlikely that any State at this moment in history would attempt to make it a criminal offense for a person to be mentally ill * * * in the light of contemporary human knowledge, a law which made a criminal offense of such a disease would doubtless be universally thought to be an infliction of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.”
The most recent decisions of the Supreme Court have reaffirmed that "the relationship between parent and child is constitutionally protected” (Quilloin v Walcott, 434 US 246, 255; see, e.g. Wisconsin v Yoder, 406 US 205, 231-233; Stanley v Illinois, supra; Meyer v Nebraska, 262 US 390, 399-401). It is also firmly established that "freedom of personal choice in matters of * * * family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment” (Cleveland Bd. of Educ. v LaFleur, 414 US 632, 639-640).
This court has little doubt that the due process clause would be offended "[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and *1080 their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children’s best interest” (Smith v Organization of Foster Families, 431 US 816, 862-863; Stewart, J., concurring in judgment).
The issue was once again raised in Caban v Mohammed (441 US 380, 394, n 16), but not reached in deciding the case. However, the court noted: "Finally, appellant argues that he was denied substantive due process when the New York courts terminated his parental rights without first finding him to be unfit to be a parent * * * Because we have ruled that the New York statute is unconstitutional under the Equal Protection Clause, we similarly express no view as to whether a State is constitutionally barred from ordering adoption in the absence of a determination that the parent whose rights are being terminated is unfit.”
The New York Court of Appeals in its decisions on termination of parental rights has consistently rejected the "best interests of the child” as the sole criteria for termination. In its delineation of extraordinary circumstances, that court has clearly identified the appropriate criteria as "surrender, abandonment, persisting neglect, unfitness, and unfortunate or involuntary disruption of custody over an extended period of time.” (Matter of Bennett v Jeffreys, 40 NY2d 543, 546.) The Court of Appeals also noted in that case (p 548): "Extraordinary circumstances alone do not justify depriving a natural parent of the custody of a child. Instead, once extraordinary circumstances are found, the court must then make the disposition that is in the best interest of the child * * * while it is true that disruption of custody over an extended period of time is the touchstone in many custody cases, where it is voluntary the test is met more easily but where it is involuntary the test is met only with great difficulty, for evident reasons of humanity and policy.”
Facially, section 384-b of the Social Services Law as applied to a "mentally ill or mentally retarded” respondent makes no provision for a dispositional hearing. Mental illness or retardation is equated with abandonment which never requires determination of the best interests of the child. However, under the "permanent neglect” provisions of the statute, the court is mandated, even after a finding of neglect, to then separately deal with the disposition based solely on the best interests of the child. (See Family Ct Act, art 6.) *1081 There is obviously a drastic disparity in treatment of the mentally ill and mentally retarded parents whose rights are immediately terminated by a finding of mental illness or mental retardation and their consent to any future adoption dispensed with, while a neglectful or abusing parent is entitled to a separate hearing on the issue of child’s best interests before there can be a termination of such a parent’s rights.
It appears to this court that the State should not have it both ways. Either the best interests of the child shall govern and a dispositional hearing mandated in all cases or there shall be an automatic termination for fault in all cases including neglect and abandonment.
This court finds that section 384-b of the Social Services Law, as applied in this case, violates substantive due process in that it terminates parental rights without fault when it is applied to the mentally ill or mentally retarded and that it also violates the equal protection clause by applying a separate and distinct standard to the mentally ill or mentally retarded, a standard not applied to neglectful parents.
Additionally, section 384-b (subd 3, par [i]) of the Social Services Law denies to the court the right to consider the likelihood that the child will be placed for adoption in determining whether the best interests of the child would thus be promoted.
In summary, this statute as applied to these respondents violates their constitutional rights by depriving them of their children solely because of their mental illness and mental retardation. The statute denies the court the right to inquire as to the children’s adaptability even though this is the alleged reason for the termination of parental rights. The failure of the Legislature to provide for a dispositional hearing in the case of mentally ill or mentally retarded parents violates the procedural and substantive due process rights of these respondents in that it punishes them for their status as mentally ill or mentally retarded.
Therefore, the petition committing the guardianship and custody of Judy and Donald Gross to the petitioner agency is denied.
Placement of subject children is extended one year.