OPINION OF THE COURT
Leah R. Marks, J.
A motion is before this court seeking dismissal of the petition because the termination of parental rights based on the mental illness or mental retardation of the parent is allegedly unconstitutional. Termination was ordered in this case because of mental illness, and the Court of Appeals reversed, referring it to the Family Court for a new trial.
At first, this court reserved decision on the motion stating a decision would be rendered if necessary after the trial because a lower court ought not to rule on a constitutional issue unless it is absolutely necessary. However, the recently received “Respondent’s Memorandum of Law” touches not only upon the constitutionality of the statute but upon this court’s procedure in conducting the trial. Therefore, *371 the court must rule now and inform the parties about the procedures to be followed and the underlying reasoning thereof.
I THE STATUTE REQUIRES CONSIDERATION OF THE BEST INTERESTS OF THE CHILD
The respondent asserts there is no determination of the bqst interests of the child in a proceeding where parental rights may be terminated because of mental illness under section 384-b of the New York State Social Services. Law. This interpretation is considered reason enough to find the statute unconstitutional.
However, in every case where termination of parental rights may take place, including cases in which the parents are deceased, the law requires that before, custody and guardianship is awarded to the petitioner the court determine the best interests of the child will be promoted by such termination.
The statutory power for termination on permanent neglect grounds under the Family Court Act is framed in the context of a dispositional hearing, often separate in time from the fact finding.[1] The Legislature in its 1976 codification of all termination statutes eliminated the statutory requirement for a separate dispositional hearing in all termination cases. The law continues to require a determination as to best interests before terminating parental rights. The failure to require a completely separate hearing may be reasonable because there are a great many cases where the proof surrounding the abandonment, death of the parents, failure to maintain contact, failure to plan realistically, mental retardation, or mental illness may be closely connected to the proof regarding the best interests of the child. Thus, a mandatory dispositional hearing separate in time might lead to unnecessary repetition and delay. However, the court is required to hear evidence and make a determination on the question.
The statute states in its introduction to section 384-b of the Socal Services Law, “It is the intent of the legislature in *372 enacting this section to provide procedures * * * furthering the best interests, needs, and rights of the child”.
That the statute requires the court to determine the best interests of the child is further clarified in its language regarding notice to fathers and consideration of children over 14 years old. In all proceedings involving the termination of parental rights, “the'court may * * * consider the wishes of the child in determining whether the best interests of the child would be promoted by the commitment of the guardianship and custody of the child.”[2] Similarly, there must be notice of any termination proceeding to the father of a child born out of wedlock “to enable [him] to present evidence to the court relevant to the best interests of the child.”[3]
Certainly, there would be no reason to permit a 14-year-old child or a father to give testimony on the best interests of the child unless it is intended that such testimony be heard and such a determination be made before termination is ordered.
The statute also directs “proof of the likelihood that the child will be placed for adoption shall not be required in determining whether the best interests of the child would be promoted by the commitment of the guardianship and custody of the child to an authorized agency.”[4] The guideline would be unnecessary unless the court’s order for termination had to be preceded by a finding that such a disposition is in the best interests of the child.
This court is not alone in interpreting the statute to require a best interests determination.
For example, the Family Court Advisory and Rules Committee, composed of Family Court Judges from throughout the State appointed by the State Administrator of the State court system, drafted the official forms promulgated by State Administrator Bartlett after the 1976 codification establishing the present statutory framework. Such forms are intended by court administration to ensure that mini *373 mum legal requirements are met. The approved, official forms for every petition and order for termination under the statute require an allegation be proven that “the best interests of the child will be promoted by commitment of the guardianship and custody of the child to”[5] the petitioner.
No reasonable interpretation of the statute would permit termination of parental rights unless the court finds that to be a desirable result for the child.
As the Appellate Division, First Department, said in January, 1980, in a case in which the facts of abandonment were clear “severing the parent-child bond and empowering the * * * agency to consent to the adoption of Wesley was an abuse as being not in the best interests of Wesley.”[6] The Appellate Division sent the case back to Surrogate’s Court, New York County, for a dispositional hearing, pointing out “the issue of who could do an adequate ‘job’ of raising the child still remains, i.e., making a disposition that is in the best interest of the child”.[7]
After all, when the parent’s rights to the child are terminated, the loss may be the child’s. That is neither a desirable nor a legal result. In the past this court has sent children home to a mentally ill mother because there were other helpful relatives available and the children loved all of them. Even if the parents are deceased, the court must be convinced before granting custody and guardianship to an agency that it is in the child’s best' interests that the petitioning agency rather than an available relative should have the custody of the child.
Thus, the mental illness ground for termination requires consideration of the best interests of the child. It is necessary to find by clear and convincing evidence that the parent will be unable “to provide proper and adequate care” for the child in the foreseeable future by reason of mental illness or retardation.[8] Clear and convincing professional *374 testimony must lead to the conclusion that the parent is mentally ill. Evidence must also lead the court to conclude termination of the parent’s rights is in the best interests of the child before the child is permanently deprived of the parent’s custody and guardianship.
II CONSTITUTIONALITY OF THE STATUTE
The fact that a best interests determination is necessary before terminating parental rights eliminates almost all valid arguments against the constitutionality of the statute. However, there is a need to discuss some points.
A. GENERALLY
No one argues against the proposition that the relationship between a parent and a child is constitutionally protected. However, one purpose of the termination statute is to have the court decide whether a relationship worth continued protection exists.
The court must ask whether the relationship has really ended due to abandonment by the parent, permanent neglect shown by the parent’s failure to plan for or maintain contact with the child, mental illness or mental retardation which evidence proves eliminates the opportunity of the child and the parent to have a desirable relationship now or in the foreseeable future.
It is often stated that the “right of a parent, under natural law, to establish a home and bring up children is a fundamental one and beyond the reach of any court”.[9] Of course, a court alone cannot interfere with that right without constitutional legislative authority. “No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”[10]
*375 Where a person has a full and fair trial, and his rights are measured by general provisions of law applicable to all in a similar condition, due process of the law has been observed.[11]
Statutes create many classifications which do not deny equal protection; it is only “invidious discrimination” which offends the Constitution. Of course, the classification must be relevant to a valid State objective.[12]
When government legislates on the basis of a classification affecting a fundamental interest, this traditional standard of defining equal protection is sometimes abandoned and the government must demonstrate a high degree of need by the government or by a balancing fundamental interest.[13]
Even assuming all those requirements, this statute’s classification and process is constitutionally permissible, at least where the mentally ill or retarded are affected. The equal protection clause permits the classification and procedures. There is no presumption the parent is unfit. On the contrary, the statute requires a strong standard of proof, clear and convincing evidence that the person is mentally ill or retarded, that the condition has existed for one year, and the condition now does and will prevent the parent’s caring for the child for the foreseeable future. In addition the claimed parental fundamental rights are clearly balanced by the child’s fundamental rights.
Parents have a broad right to raise their children as they see fit, as long as they do not harm them or allow the child to harm others. Under our legal system, the family is left alone unless the State presents a convincing reason for intervention. For many years, the courts have prohibited unreasonable interference “with the liberty of parents and guardians to direct the upbringing and education of children under their control.”[14]
*376 The legislation in question recognizes “it is generally desirable for the child to remain with or be returned to the natural parent because the child’s need for a normal family life will usually best be met in the natural home”.[15]
The parent’s right to the child is greater than the rights of others unless there is a showing of unfitness, or grounds for termination of parental rights or certain extraordinary circumstances.[16]
Under the statute, the parent’s interest in preserving the relationship is overridden only when the parent’s guardianship and custody would lead to an unfair deprivation for the child, one the State has a .valid interest in preventing.
B. THE CHILD’S FUNDAMENTAL RIGHT TO A PERMANENT HOME MUST BE BALANCED WITH THE PARENT’S FUNDAMENTAL RIGHTS
It is true as stated in Matter of Gross[17] that the loss of a child is “ ‘as onerous a penalty as the deprivation of the parent’s freedom.’ ” However, there is nothing more onerous than subjecting a child to a loss of the rights to a permanent family and a potentially happy future.
In the extended history of this statute, many years have passed since the courts and the Legislature affected the rights of parents without consideration of the rights of children to their own potentially healthy, happy and stable futures.
In 1959, the State Legislature recognized the serious situation of having termination dependent entirely upon abandonment. The Social Welfare Law (since renamed) then made no provision for the children who were not abandoned in a legal sense but were abandoned in every other sense, doomed to live in institutions or foster homes because the biological parents were not willing to provide them with a family life even when assisted by social agencies. These children were asked to grow up “with only the barest *377 of contact with their natural parents. Tragically, such contacts while so infrequent or superficial as to be meaningless to the child”[18] were then a bar to the judicial finding of abandonment, and other grounds for freeing the child were not available. “Consequently, although many of these children could be adopted if the legal rights of the natural parents were terminated, they are as a practical matter, unadaptable and continue in custodial care at the cost of lives”.[19]
After the permanent neglect grounds were enacted, it was clear that the children needed other statutes granting them rights such as the right to be freed from a mentally ill parent who was not caring and would not care for the child.
These rights of the child are fundamental personal rights also. The child cannot be imprisoned without due process and equal protection of the law.[20] A life without permanence, a life without a parent or the hope of a parent can be a deprivation of the child’s liberty.
The Appellate Division, Second Department, found constitutional an earlier statute[21] regarding mental illness grounds for termination.[22] Although it has been claimed[23] that the same result cannot be reached today, this is not the case. Even if this law must be subject to the “searching judicial scrutiiiy reserved for laws that create suspect classifications or impinge upon constitutionally protected rights”,[24] it is constitutional.
In applying both the strict scrutiny standard and the standard of a rational relationship to a legitimate State *378 purpose,[25] the court must look at the impact on the child, not merely the parent. The State has legitimate interest in ensuring permanent homes for children. As the State Legislature has found after considering much research in this field, placement in temporary homes throughout their childhood has “deleterious effects on [the children’s] development into responsible, productive citizens.”[26]
No one has suggested that it is unconstitutional for the State to interfere if parents are neglecting or abusing the child. Where there is a necessity of balancing children’s rights and parent’s rights, the Constitution clearly permits protecting the child so long as legal safeguards are provided to ensure the child both needs protection and needs to have the legal relationship with the parents changed.
The equal protection clause of the Fourteenth Amendment is not violated. The legislative classification is not arbitrary and can be said to bear a fair and substantial relation to the manifest evil reasonably perceived by the Legislature.[27] If a classification has a reasonable basis, it does not offend the Constitution “merely because it is not made with mathematical nicety or because in practice it results in some inequality.”[28] The Legislature can conceivably view the risk of preventing some mentally ill or retarded parents from retaining rights in their children as being justified by the greater right of the children to a permanent family and a chance to reach the child’s fiill potential as a citizen and a human being.
In recognition of the danger of unfairness to those whose very illness may hinder their defense, the Legislature has insisted that clear and convincing evidence be presented in such cases.[29] This means-not that the court find it possible that the child will be without the parent due to mental *379 illness or mental retardation but that the court be entirely satisfied that the child will continue without such parent for the foreseeable future.
Of course, some believe that the mentally retarded or ill need even more consideration due to the completely involuntary nature of their condition. That sounds logical and probably led the State Legislature to require a higher standard of proof where mental illness or retardation are in question.
However, a Trial Judge must face what is done whatever the specific allegation. Permanent neglect and abandonment are almost invariably the acts or omissions of parents who are the victims of social ills, probably no more the masters of their fates than those suffering from mental illness or retardation. We cannot permit ourselves to find against the children because we understand the parents. We must observe each party’s rights as carefully as legally possible. However, when the proof is sufficient and the best interests of the child require, we must. act.
The 18-year-old girl now before this court, in a proceeding under which an attempt is being made to terminate her rights to her third child on grounds of permanent neglect, is probably no more the master of her acts than any mentally ill or retarded person. Almost all the parents affected by termination legislation are victims of the lives into which they were born and from which they have never escaped. Some of the mentally ill are also in that same category. It is not a coincidence that statistics show more mental illness among the poor and deprived than others in society. It is not a coincidence that most parents who have abandoned or permanently neglected their children are also from the same poor and deprived group.
Compassion for the parents must not lead us to help destroy their children, ensuring the children will remain deprived always of a hope-filled life.
Ill SPECIFIC DECISION ON THIS MOTION
This statute, which requires a finding that it is in the best interests of the child prior to any termination of pa *380 rental rights, is constitutional. It is narrowly drawn as interpreted, so that there appears no reasonable alternative for achieving its goal with less impact on the unfortunate retarded or mentally ill parent.[30] It requires clear and convincing evidence, a high standard of proof which in the court’s experience is extremely difficult to attain. That same standard is not required for other termination grounds.[31]
After the appointment of a guardian ad litem for the mother, this proceeding will begin with a determination of the allegation concerning mental illness. If there is clear and convincing evidence of mental illness as defined by the statute, a dispositional hearing will be scheduled to determine whether termination of parental rights would be in the best interests of the children.
The motion for a dismissal on constitutional grounds is denied. Trial is scheduled for September 18,1980.

. Section 625 of the New York State Family Court Act.

. Section 384-b (subd 3, par [k]) of the New York State Social Services Law.

. Subdivision 3 of section 384-c of the New York State Social Services Law.

. Section 384-b (subd 3, par [i]) of the New York State Social Services Law.

. Promulgated pursuant to Administrative Order, No. AO/78/82, dated December 22, 1978.

. Matter of Wesley L. (72 AD2d 137, 144).

. Matter of Wesley L. (supra, p 144).

. Section 384-b (subd 4, par [c]) of the New York State Social Services Law.

. People ex rel. Portnoy v Strasser (303 NY 539, 542); Meyer v Nebraska (262 US 390, 399 [which struck down a State law forbidding the teaching of foreign languages]).

. US Const, 14th Amdt, §1. Part of the first section of the five-section amendment which is usually the foundation of arguments that section 384-b (subd 4, par [c]) of the Social Services Law is unconstitutional.

. Basically an unchanged interpretation since Marchant v Pennsylvania R. R. (153 US 380, 386).

. Ferguson v Skrupa (372 US 726, 732) ; Williamson v Lee Opt. Co. (348 US 483, 489).

. Dunn v Blumstein (405 US 330).

. Pierce v Society of Sisters (268 US 510, 534-535, [which struck down a State law requiring public school education for children]).

. Section 384-b (subd 1, par [a], cl [ii]) of the New York State Social Services Law.

. Matter of Sanjivini K. (47 NY2d 374); Matter of Leon RR (48 NY 2d 117).

. 102 Misc 2d 1073, 1079.

. A 1959 Memorandum by the Citizens’- Committee for Children of New York, Inc., written to the State Legislature.

. Ibid.

. Matter of Gault. (387 US 1).

. Subdivision 7 of section 384 of the Social Services Law, now section 384-b (subd 4, par [c]) of the Social Services Law.

. Matter of Berman (Becky A. H.) (49 AD2d 327).

. Matter of Gross (102 Misc 2d 1073, supra).

. San Antonio School Dist. v Rodriguez (411 US 1, 40 [a case which discusses the various means of deciding constitutionality where a violation of the equal protection clause is alleged] ).

. Turner v Fouche (396 US 346, 362).

. The finding is stated in section 384-b (subd 1, par [b]) of the Social Services Law.

. See Town of Huntington v Park Shore Country Day Camp of Dix Hills (47 NY2d 61, 66); Williamson v Lee Opt. Co. (348 US 483, 489, supra); People v Illardo (48 NY2d 408, 417).

. Lindsley v Natural Carbonic Gas Co. (220 US 61, 78).

. Section 384-b (subd 3, par [g]) of the New York State Social Services Law.

. A potential requirement for a finding of equal protection under Shapiro v Thompson (394 US 618) and Dunn v Blumstein (405 US 330, supra).

. This situation may change. It is possible the United States Supreme Court may order a higher standard of proof in all other termination cases. The question is now before that court.