OPINION OF THE COURT
Paula J. Hepner, J.
The instant petitions for the commitment of two infants, pursuant to section 384-b of the New York Social Services Law, was filed in this court on March 23, 1993 by Little Flower Children’s Services alleging that Vanessa L., 11 years of age, and Jessica L., 14 years of age, are abandoned children. Personal service was effected in July 1993 upon Diane R, the birth mother of these children, and in August 1993 upon Gerald L., the putative father of both children. Diane R. appeared in September 1993 and was assigned counsel. Gerald L. defaulted.
Trial of the termination proceeding was held on January 3, 1994, and after taking testimony from the agency caseworker and the respondent mother, and reviewing the documents offered in relation to the case, the court entered findings of abandonment based upon clear and convincing proof: (1) that both respondents, by their actions, evinced an intent to forego their parental rights and obligations; (2) that neither respondent was discouraged from visiting the children or contacting the agency; and (3) that the respondent mother did not rebut the statutory presumption that she was able to maintain contact or communicate with the children and the agency by demonstrating good cause for her failure to do so. The respondent mother attempted to show that she was discouraged from visiting the children by the foster parent but her claim is inconsistent with the testimony concerning the foster parent’s willingness to facilitate visitation and contact between the mother and the children since this petition was filed. The respondent mother’s incarceration throughout the six months immediately preceding the filing of these petitions is not a sufficient excuse for her failure to maintain contact with the children and the agency. (Matter of Anthony M., 195 AD2d 315 [1st Dept 1993]; Matter of Ravon Paul H., 161 AD2d 257 [1st Dept 1990].)
Thereafter, counsel for the respondent mother made an oral motion asking the court for a continuance in order to call the *514 children as witnesses and, in his offer of proof, indicated his purpose was to elicit testimony showing that they do not wish to be adopted. The court denied the application, ruling that the only issue the children could testify to, at this stage of the proceeding, was whether or not they had any contact with their mother or father. Counsel for the respondent made a second oral motion asking the court, in the alternative, to conduct a dispositional hearing and take testimony from the children about their desire to be adopted as part of the court’s inquiry into whether the children’s best interests require adoption. The court directed the parties to submit memoranda of law addressed to the issues raised by the respondent’s second motion. Decision was reserved to give the court an opportunity to consider the points and authorities raised by counsel and to review the applicable case law.[1]
Social Services Law § 384-b (4) permits a court to make an order committing the guardianship and custody of a dependent child to an authorized child-caring agency or a foster parent upon the grounds of abandonment, mental illness, mental retardation, permanent neglect and severe or repeated abuse. Additional provisions pertaining to terminations of parental rights upon the ground of permanent neglect are set forth in article 6, sections 611 to 634 of the Family Court Act.[2] In contrast to Family Court Act § 631, which provides three possible dispositions after a finding of permanent neglect, Social Services Law § 384-b (3) (g) provides only for the entry of a commitment order once the court makes a finding of *515 abandonment, mental illness or mental retardation.[3] Dismissal of the proceeding is the only other recourse. In cases other than permanent neglect and severe or repeated abuse, the only other inquiry mandated by Social Services Law § 384-b (11) is a requirement that, upon entry of an order committing the guardianship and custody of a child, a court must inquire into whether any foster parent or relative wishes to adopt the child and, if so, establish a process to expedite the adoption proceeding.
Separate dispositional hearings are not statutorily mandated for proceedings to terminate parental rights upon the grounds of abandonment, mental illness or mental retardation,[4] and the Court of Appeals has not held that the procedural provisions for permanent neglect cases in article 6 of the Family Court Act should be followed in termination proceedings on the grounds of abandonment, mental illness or mental retardation. (Matter of Anonymous [Longobardi] 40 NY2d 96 [1976].) In Matter of Ulysses T. (87 AD2d 998 [4th Dept 1982], affd 66 NY2d 773 [1982]), the Court of Appeals upheld the Appellate Division’s determination that it would be inappropriate to apply the provisions for terminations based on permanent neglect contained in Social Services Law § 384-b (7) (d) (former [iii]) to abandonment proceedings.[5] This court believes the same reasoning would prevent application of article 6’s provisions in permanent neglect cases to termination cases based on abandonment, mental illness or mental retardation.
The permanent neglect statute was enacted in 1959 and the procedural counterpart was added in 1962.[6] Prior to that, the concepts of suspended judgments and dispositional hearings were unknown to the termination process. The obvious reason for bifurcating the hearing into two phases in the case of *516 permanent neglect and severe or repeated abuse is to allow the court to hear evidence and determine whether the parent is entitled to a second chance to accomplish the goals of the service plan and secure the return of the child. Had the Legislature wanted to incorporate these features into the procedure for all terminations on the grounds of abandonment, mental illness or mental retardation, it could have done so.[7]
In Matter of Joyce T. (65 NY2d 39 [1985]), a termination on mental retardation grounds, the Court of Appeals explained the reasons why a different procedure is appropriate for terminations based on grounds other than permanent neglect. The Court held that a separate dispositional hearing is not needed because the very basis for terminating parental rights requires a court to make findings that the parents are, for the present and the foreseeable future, unable to care for the children. Thus, the possibility of change in the parent’s situation, acknowledged by the statutes involving permanent neglect and severe or repeated abuse, does not exist, and the additional "delay and indecision” occasioned by conducting a separate dispositional hearing would not be in the child’s best interests.[8] (Supra, at 49.)
It is apparent to this court, that underlying the statutory scheme for terminations on the grounds of abandonment, mental illness, and mental retardation is a presumption by the Legislature that adoption is in the best interests of the child. In Matter of Female W. (47 NY2d 861, 862 [1979]), the Court of Appeals confirmed this presumption by holding that "[i]ndeed, most often a finding of abandonment where there has in fact been an abandonment will also be in the best interests of the child.” Arguments based on the impossibility *517 of change can be formulated with respect to the grounds of mental illness, mental retardation, or abandonment and although within a court’s discretion to conduct a dispositional hearing, appellate courts frequently have held that separate dispositional hearings are not required. (Matter of Lyndell M., 182 AD2d 623 [2d Dept 1992]; Matter of Joseph H., 185 AD2d 682 [4th Dept 1992]; Matter of Rose Marie M., 94 AD2d 734 [2d Dept 1983]; Matter of Jennifer R., 81 AD2d 616 [2d Dept 1981]; Matter of Dlaine Bernice S., 72 AD2d 775 [2d Dept 1979].)[9]
The presumption that adoption in these three circumstances is in the best interests of the child must be a rebuttable one since a court is never relieved of its obligation to determine, in all cases, whether severance of parental rights and adoption is in the best interests of the child. (Matter of Jose C., 166 AD2d 239 [1st Dept 1990].) Therefore, with respect to terminations based on mental illness or retardation and abandonment, the Legislature must have intended courts to entertain, in a single proceeding, the facts supporting the cause of action as well as the facts, if any, to rebut the presumption that if a finding is made, adoption is in the best interests of the child. This interpretation is confirmed by the holding of the Court of Appeals in Matter of Joyce T. (supra, at 49), where the Court said "the best interests of the child are subsumed in the initial fact-finding determination.”
If severing the child’s ties to the biological parent and freeing the child for adoption would be contrary to the best interests of the child,[10] the issue should be raised in a pretrial *518 motion to dismiss the proceeding, not after a finding has been made, parental rights have been terminated, and the custody and guardianship of the child has been committed to an authorized agency. (Matter of Ulysses T., supra.) Depending on the complexity of the issues, the court could then determine whether they should be heard in a separate hearing, which the Court of Appeals in Matter of Joyce T. (supra) has indicated is in the sound discretion of the court, or tried together with the termination proceeding.
At the trial in this matter, this court learned the children entered foster care in November 1987. From that date until the day these petitions were filed, the respondent mother did not visit the children except for a few months prior to her incarceration when she came to the foster home on weekends. From September 1991 to September 1993, the respondent was incarcerated; yet, she admitted having social workers at each facility where she was imprisoned whose job it was to make calls on her behalf regarding the children. Still, no calls were made until October 1993. For the final year of her incarceration, the respondent resided in a low security work camp and had a job where she earned a salary. She could have made calls to the agency or the children independently but chose not to do so. The respondent mother wrote one letter to the children in 1991 but discontinued this when the children did not write back. The respondent mother did not telephone the foster parent "collect” because she was jailed far away from Brooklyn and it would cost too much to make "collect” calls. There is no question in this court’s mind that the respondent mother’s acts represent an unequivocal intent to abandon these children, and that there was no insurmountable hardship preventing her from communicating with the children or contacting the agency. (Matter of Catholic Child Care Socy. [Danny R.], 112 AD2d 1039 [2d Dept 1985].)
During the trial the court also heard testimony concerning the present circumstances of the respondent and the children. Since her release from prison, the respondent resided with a friend and just recently got her own apartment in Williams-burg. Since she appeared in this proceeding, the respondent has had biweekly visitation with the children, for approximately 8 to 10 visits. The children have lived with their *519 maternal aunt for all of the years they have been in placement. According to their attorney, they wish to remain there and be adopted by her.[11]
The respondent mother’s belief that her children do not desire to be adopted could be the product of her own wishful thinking. Or the children may have even said this because they do not want to hurt their mother by telling her the truth. Neither is a reason for them to be compelled to come to court and speak to the Judge. These children have a lawyer representing them and there is no reason to believe that he is not protecting their interests or assisting them in expressing their wishes to the court.
Accordingly, the respondent’s motion for a continuance in order to call the children to testify has been reconsidered, in light of the court’s decision herein, and remains denied. While the court has the discretion to conduct a dispositional hearing, the respondent mother’s motion for a dispositional hearing must be denied since testimony relevant to the question of what is in the children’s best interests has already been elicited from the witnesses and, in this particular case, a dispositional hearing would serve no useful purpose. Moreover, unnecessarily subjecting the children to cross-examination at a dispositional hearing might well be harmful to them. The court’s order of January 3, 1994 terminating the parental rights of both respondents on the grounds of abandonment is reinstated, and consistent with the best interests of the children, the custody and guardianship of Vanessa L. and Jessica L. is committed to the Commissioner of Social Services and her agent, Little Flower Children’s Services.

. A memorandum of law was received from the respondent’s attorney and from the Law Guardian, who opposes the application for a separate dispositional hearing on two grounds: first, that such a hearing need not be held in abandonment cases, most especially where the respondent has raised no issues warranting the court’s further consideration, and secondly because he, as the children’s attorney, can represent that the children both wish to be adopted so there is no need for them to testify in a hearing. The court received only a letter from petitioner’s counsel indicating the agency was not requesting a hearing since their plan remained adoption.

. As Family Court Act § 611 indicates, sections 611 to 634 establish procedures only for proceedings initiated under Social Services Law § 384-b (4) (d) for permanent neglect. In terminations based upon the ground of permanent neglect, the Legislature bifurcated the proceeding into two stages, a fact-finding hearing under Family Court Act §622, where the allegations of the petition must be supported by clear and convincing proof, and thereafter, a dispositional hearing under Family Court Act § 623, where the court must determine which of the three dispositional alternatives available under Family Court Act § 631 should be made.

. With regard to the fifth ground for termination — severe or repeated abuse — Social Services Law § 384-b (8) (c) authorizes two possible dispositions. The court may enter a commitment order or a suspended judgment.

. Social Services Law § 384-b (8) (c) clearly provides for a dispositional hearing in cases involving severe or repeated abuse.

. Social Services Law § 384-b (7) (d) (iii) (repealed by L 1983, ch 911, § 3) created an exception for parents who were incarcerated, by deeming them unable to maintain contact with their children and excused them from the obligation to plan for the future of their children. The law now places upon incarcerated parents the same responsibilities all other parents have. (Matter of Gregory B., 74 NY2d 77, 88-89 [1989].)

. Laws of 1959 (chs 449, 450, as amended) and Laws of 1962 (ch 686, as amended).

. Judges and commentators continue to call for the elimination of the procedural differences between terminations based on permanent neglect and those based on these other grounds (Matter of N. Children, 107 Misc 2d 763 [Fam Ct, Kings County 1981]; Carrieri, Dispositional Hearings in Abandonment Proceedings, NYLJ, Jan. 26, 1994, at 1, col 1), but the Legislature has not responded.

. The Court of Appeals, in Matter of Joyce T. (supra, at 46), did not eliminate the possibility of holding a separate dispositional hearing. In dicta, the Court remarked that there may be some cases involving termination of parental rights on grounds other than permanent neglect where a court, in its discretion, might order a separate dispositional hearing (citing Matter of N. Children, supra [mental illness]; Matter of Daniel A. D., 106 Misc 2d 370 [Fam Ct, NY County 1980] [mental illness], where dispositional hearings were held).

. While conceding there is no statutory mandate requiring a dispositional hearing after a finding of abandonment, decisions from the First Department have upheld the discretion of courts to conduct separate dispositional hearings in abandonment cases. (Matter of Israel R., 200 AD2d 498; Matter of Wesley L., 72 AD2d 137 [1st Dept 1980], appeal dismissed 49 NY2d 1047 [1980]; see also, Matter of Maeru P., 104 Misc 2d 895 [Fam Ct, NY County 1980].)

. Situations in which a motion to dismiss would be appropriate in abandonment proceedings would involve any of these typical scenarios: (1) the biological parent had minimal to no contact with the child, but, while the termination petition was pending, the respondent had substantial visitation resulting in the development of a relationship with the child and has begun to actively plan for the return of the child; (2) the biological parent has played some role in the child’s life, the child knows who the parent is, and the psychological impact of severing the "fictional parent” will have an emotionally detrimental effect upon the child either because termination destroys the illusion that the absent parent will return and rescue the child, or termination destroys the idealized parental image from the past; and (3) *518 the child is over the age of 14 and does not wish to be adopted. Situations in which a motion to dismiss would be appropriate in mental illness cases are referred to in Matter of N. Children (supra) and Matter of Daniel A. D. (supra).

. In termination proceedings, which is one form of custody proceeding, Social Services Law § 384-b (3) (k) leaves consideration of the child’s wishes to the discretion of the court; yet, under Matter of Bennett v Jeffreys (40 NY2d 543 [1976]), when making another type of custody determination, the child’s wishes are clearly a factor which a court must consider. This court fails to see a distinction between the two types of proceedings warranting different treatment of the child’s wishes. This court views the child’s wishes in a termination proceeding to be of similar relevance and the weight to be given to the child’s wishes is dependent upon the age and maturity of the child.