■ In the Matter of JOSEPH T., Alleged to be the Child of a Mentally Ill or Mentally Retarded Parent. MADISON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; BILLIE U., Appellant. [632 NYS2d 320] —Crew III, J. Appeal from an order of the Family Court of Madison County (O'Brien, III, J.), entered May 9, 1994, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's child to be the child of a mentally ill or mentally retarded parent, and terminated respondent's parental rights.

Respondent is the biological mother of Joseph T. (born in 1992). Shortly after the child's birth, petitioner commenced a neglect proceeding against respondent. A fact-finding hearing was conducted, at which respondent apparently admitted certain of the allegations contained in the petition and, by order entered October 27, 1993, Family Court adjudicated respondent's son to be neglected and placed him in petitioner's custody for 12 months. Approximately one week later, petitioner commenced the instant proceeding seeking to terminate respondent's parental rights based upon her alleged inability, by reason of mental illness or mental retardation, to provide adequate and proper care for her son. At the conclusion of the hearing that followed, Family Court granted the petition and

terminated respondent's parental rights. This appeal by respondent followed.

In order to terminate respondent's parental rights, petitioner was required to demonstrate, by clear and convincing evidence, that respondent is presently, and for the foreseeable future will be, unable to provide proper and adequate care for her son by reason of her mental illness or mental retardation (*see,* Social Services Law § 384-b [4] [c]; *Matter of Donald LL.,* 188 AD2d 899, 900-901). Even accepting respondent's assertion that the proof adduced at the hearing was insufficient to establish " 'mental retardation' " within the meaning of Social Services Law § 384-b (6) (b), the record overwhelmingly substantiates a finding that respondent suffers from a mental illness and, as such, Family Court's decision must be affirmed.

Social Services Law § 384-b (6) (a) defines " 'mental illness' " as "an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking or judgment to such an extent that if such child were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child" (*see, Matter of Jamie YY.,* 176 AD2d 1004, 1005). Here, the court-appointed psychologist who evaluated respondent, Fred Naugle, testified that respondent, who has only borderline intellectual functioning,[1] possessed a highly distorted and inaccurate perception of reality. Naugle also testified that respondent was sufficiently paranoid so as to seriously interfere with her ability to function and, further, that respondent's "enormous, almost all-consuming preoccupation with herself * * * particularly her physical functioning"[2] would make it extraordinarily difficult, if not impossible, for respondent to live outside of a supervised setting. With respect to her child, Naugle stated that respondent would be able to focus her attention on her son only for brief periods of time and that she would be unable to place his needs above her own. Finally, Naugle opined that respondent's mental condition would persist for the foreseeable future and that her son would be in

---

1. While it is true that Naugle testified that this factor alone would neither classify respondent as mentally retarded nor preclude her son's return to her, respondent's capabilities in this regard must be considered in determining her ability to provide adequate care for her child.

2. The record contains numerous medical records documenting respondent's frequent, and at times daily, visits to various hospital emergency rooms. Often, no organic cause was found for respondent's complaints and Naugle opined that such incidents may well have been either a bid for attention or respondent's way of coping with certain issues or fears.

danger of becoming a neglected child if he was returned to respondent's care.[3]

The foregoing testimony, coupled with the documentary evidence contained in the record, amply demonstrates that respondent is, and for the foreseeable future will remain, unable to care for her child by reason of her mental illness (*see generally, Matter of Jammie CC.*, 149 AD2d 822; *Matter of Vaketa Y.*, 141 AD2d 892). To the extent that respondent contends that she could make some progress given appropriate supervision, "[t]he mere possibility that respondent's condition, with proper treatment, could improve in the future is insufficient to vitiate Family Court's conclusion" (*Matter of Vaketa Y., supra,* at 893; *see, Matter of Brett J.*, 206 AD2d 595, 596-597, *lv denied* 84 NY2d 807). Respondent's remaining arguments have been examined and found to be lacking in merit.

Mikoll, J. P., White, Yesawich Jr. and Spain, JJ., concur. Ordered that the order is affirmed, without costs.

---

3. As respondent neither testified nor called her own expert, Naugle's testimony as to her mental condition and capabilities was uncontroverted.