■ In the Matter of MICHAEL E., a Child Alleged to be Permanently Neglected. CORTLAND COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant; MARY F., Respondent. [659 NYS2d 578] —Carpinello, J. Appeal from an order of the Family Court of Cortland County (Frawley, J.H.O.), entered August 5, 1996, which dismissed petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to, *inter alia,* adjudicate respondent's child to be permanently neglected.

The difficult issue before this Court concerns the parental relationship between respondent and her now 17-year-old son, Michael, who has been in foster care since March 1990. Both mother and son have been diagnosed as mentally retarded—respondent's intellectual functioning is within a mildly retarded range and Michael's intellectual functioning is within a moderately retarded range. They have maintained regular contact with each other through supervised visitations and by all accounts have a loving relationship. Michael is unable to live independently and needs almost constant supervision. Although his foster parents have indicated that Michael may remain with them "as long as he behaves and as long as [their] health is intact", they have not indicated a desire to adopt Michael. Sadly, Michael's prospects of being adopted by anyone are bleak. Only two people have remained a constant in Michael's life—respondent and an elderly, ailing friend who resides in a nursing home.

In February 1996, petitioner commenced a proceeding to terminate respondent's parental rights based upon alleged permanent neglect (*see,* Social Services Law § 384-b [7]) and mental retardation (*see,* Social Services Law § 384-b [4] [c]; [6] [b]). Following a fact-finding hearing on the petition, Family Court found respondent unable, by reason of mental retardation, to adequately care for Michael. Regarding the allegation

---

of permanent neglect, the court found that respondent "has not been able to plan for the future of this child, although making some attempts to do so". No dispositional hearing was conducted. Rather, in its decision following the fact-finding hearing, Family Court concluded, given the likelihood of Michael never being adopted and the loving relationship between him and respondent, that depriving him of contact with respondent would serve no legitimate purpose or be in his best interest. The court accordingly dismissed the petition and extended placement for an additional year. Petitioner appeals.

Petitioner's primary contention on appeal is that, because it established by clear and convincing evidence both allegations in the petition, Family Court was required to transfer custody of Michael to it and terminate respondent's parental rights. We disagree.

It is well settled that in order to terminate parental rights on the ground of mental retardation, the petitioning agency must demonstrate by clear and convincing evidence that the parent is presently and for the foreseeable future unable to provide proper and adequate care for the child (*see*, Social Services Law § 384-b [4] [c]; *see also, Matter of Brett J.*, 206 AD2d 595, 596, *lv denied* 84 NY2d 807). It is equally well settled that in order to terminate parental rights on the ground of permanent neglect, the petitioning agency must prove by clear and convincing evidence that despite diligent efforts on its part to strengthen and encourage the parental relationship, a parent did not, although physically and financially able to do so, plan for the child's future (*see*, Social Services Law § 384-b [7] [a]; Family Ct Act § 614 [1]; *see also, Matter of Sheila G.*, 61 NY2d 368, 380).

Judy Grimes, the court-appointed psychologist who conducted a three-hour evaluation of respondent in May 1996, testified that respondent is mildly retarded with an IQ fluctuating between 65 and 70. Due to respondent's low cognitive ability, immaturity and lack of common sense and good judgment, Grimes concluded that respondent lacks the capacity to parent a child. In her opinion, respondent would be "very bossy and controlling" in her relations with Michael and unable to provide him with structure or supervision. She further opined that respondent would not benefit from parenting assistance or therapy.

Although Grimes did not specifically testify that Michael would be in danger of becoming neglected if placed in respondent's care (*see*, Social Services Law § 384-b [6] [b]), this finding can be inferred. Her testimony, which was unrefuted, established that by reason of respondent's mental retardation,

she will be unable to provide proper and adequate care for her son for the foreseeable future. Accordingly, a finding under Social Services Law § 384-b (4) (c) was warranted.

We are unable to conclude, however, that petitioner demonstrated by clear and convincing evidence that respondent permanently neglected Michael. Under Social Services Law § 384-b (7) (a), petitioner was required to prove that respondent failed "substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, *although physically and financially able to do so*, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (emphasis supplied). In its decision, Family Court found that petitioner "has also shown by clear and convincing evidence that [respondent] has *not been able* to plan for the future of [Michael], although making some attempts to do so" (emphasis supplied). This discrepancy, while subtle, strongly suggests that Family Court, in concluding that respondent is *unable* to plan for Michael's future, actually determined that the permanent neglect allegations had *not* been proven by petitioner. Such a finding would be consistent with this Court's review of the record.

With respect to petitioner's diligent efforts, it does not appear that petitioner, although cognizant of respondent's mental retardation, took affirmative steps to adequately address her special needs. While there was evidence that petitioner required respondent to attend parenting classes, for example, it is unclear whether these classes targeted individuals with developmental disabilities such as respondent (*compare, Matter of Christy C.*, 226 AD2d 770, *lv denied* 88 NY2d 808; *Matter of Karen Y.*, 156 AD2d 823, *lv denied* 75 NY2d 710).*

Even assuming that diligent efforts were undertaken by petitioner to encourage and strengthen respondent's relationship with Michael, the evidence reveals that respondent did make sincere efforts to plan for Michael's future to the best of her ability. She obtained a suitable apartment to accommodate herself and her son, attended Michael's six-month review sessions, completed parenting classes, maintained regular contact with him through visitation and displayed affection during their visits (*cf., Matter of Sarah B.*, 203 AD2d 747, 748). Thus, contrary to petitioner's contention, we find that petitioner did not establish that respondent permanently neglected Michael

---

* It is also noteworthy that, despite instructions that the caseworker highlight specific details of actions taken and examples of significant changes since the last assessment plan, the September 1995 and March 1996 assessment and service plans are virtually identical.

(cf., *Matter of Naticia Q.*, 226 AD2d 755; *Matter of Sarah B., supra*). This being the case, we now address Family Court's decision not to terminate respondent's parental rights without first holding a dispositional hearing.

There is no requirement for a separate dispositional hearing after a finding of mental retardation (*see, Matter of Joyce T.*, 65 NY2d 39, 49; *Matter of Elizabeth Q.*, 126 AD2d 905, 906) and we agree with Family Court's assessment that continued foster care was a preferable alternative to parental termination. In this vein, we reject petitioner's argument that, because the mental retardation allegation was established, Family Court had no other option than to terminate respondent's parental rights (*see, Matter of Joyce T., supra*, at 46).

The Court of Appeals has noted that Social Services Law § 384-b "authorize[s] termination of parental rights only when specific and definite criteria are met *and* when necessary in the best interest of the child" (*Matter of Nereida S.*, 57 NY2d 636, 640 [emphasis supplied]). Significantly, a permanent severance of a parent-child relationship, even when a child has been in prolonged foster care, is not always beneficial to the child (*see, Santosky v Kramer*, 455 US 745, 765, n 15). The instant case presents such a scenario. Here, there is no danger that respondent's continued parental relationship with Michael will be detrimental to him (*cf., Matter of Kevin R.*, 112 AD2d 462, *lv denied* 67 NY2d 602) or interfere with the development of a permanent, adoptive relationship (*see, Matter of Michael B.*, 80 NY2d 299, 315; *cf., Matter of Stephen B.*, 176 AD2d 1204, *lv denied* 79 NY2d 752, *appeal dismissed* 79 NY2d 914), a goal not feasible in this case. Under these circumstances, we agree with Family Court's determination that it is not in Michael's best interest to terminate respondent's parental rights.

Cardona, P. J., Mercure, White and Casey, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as may be construed as a finding that respondent permanently neglected her child, and, as so modified, affirmed.

