■ In the Matter of CHERYL YY., Alleged to be the Child of a Mentally Retarded Parent. FULTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; LAVETTA ZZ., Appellant. (And Another Related Proceeding.) [754 NYS2d 705] —Crew III, J. Appeals from two orders of the Family Court of Fulton County (Jung, J.), entered June 21, 2001, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate respondent's children to be the chil-

---

dren of a mentally retarded parent, and terminated respondent's parental rights.

Respondent is the biological mother of two special needs children, born in 1991 and 1993. Insofar as is relevant to this appeal, petitioner commenced the instant proceedings in December 2000 seeking to adjudicate respondent's children to be the children of a mentally retarded parent and to terminate respondent's parental rights.[1] A fact-finding hearing ensued, during the course of which testimony was received from, among others, Jeffrey Wittman, the clinical psychologist who conducted the court-ordered evaluation of respondent, David Horenstein, the clinical psychologist who previously had evaluated respondent at petitioner's request, and John Seltenreich, a licensed psychologist testifying on behalf of respondent. Upon due consideration of the foregoing testimony, Family Court granted petitioner's applications finding, inter alia, that respondent was unable to provide adequate care for her children due to her mental retardation and, further, that termination of her parental rights would be in the children's best interests. This appeal by respondent ensued.

Where, as here, the petitioning agency seeks to terminate an individual's parental rights based upon mental retardation (*see* Social Services Law § 384-b [6] [b]), the agency bears the burden of establishing by clear and convincing evidence that the parent presently is, and for the foreseeable future will be, unable to provide proper and adequate care for the child in question due to his or her mental retardation (*see Matter of Michael E.*, 241 AD2d 635, 636; *Matter of Joseph T.*, 220 AD2d 893, 894). Based upon our review of the record as a whole, we are satisfied that this standard was met here and, accordingly, we affirm.

Although Wittman and Horenstein differed regarding whether respondent's IQ score placed her within the mentally retarded range,[2] both agreed that respondent was mentally retarded within the meaning of Social Services Law § 384-b (6) (b), which provides, in pertinent part, as follows: " '[M]ental retardation' means subaverage intellectual functioning which

---

**1.** Although petitioner subsequently commenced two additional proceedings seeking to terminate respondent's parental rights based upon permanent neglect, those petitions were withdrawn at the conclusion of the fact-finding hearing and are not at issue on appeal.

**2.** Wittman testified that respondent's full scale IQ score was 81, which placed her in the borderline range of intellectual capacity, whereas Horenstein testified that respondent's full scale IQ score was 67, which placed her in the mildly mentally retarded range.

originates during the developmental period and is associated with impairment in adaptive behavior to such an extent that if such child were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child as defined in the family court act." Specifically, Wittman opined that respondent's general fund of knowledge, reasoning ability and judgment were impaired and that she had serious deficiencies in her "emotional adaptive functioning." Wittman further testified that these deficiencies, coupled with the special needs of respondent's children, "create[d] a risk for substantial lapses in judgment" and that there was a "very high risk" of the children becoming neglected if they were returned to respondent's care and custody. Horenstein offered similar testimony, stating that the children's special needs would place demands upon respondent that were far in excess of her limited abilities. Both Wittman and Horenstein also agreed that there was little likelihood that the provision of additional services by petitioner would improve respondent's abilities in this regard. In our view, such testimony establishes by clear and convincing evidence that respondent, by reason of mental retardation, is and for the foreseeable future will be unable to care for her children and, further, that termination of her parental rights is in her children's best interests (*see Matter of Mathew Z.*, 279 AD2d 904; *Matter of Kathleen OO.*, 260 AD2d 967). To the extent that respondent's expert offered a contrary opinion, this testimony presented a credibility issue for Family Court to resolve.

The remaining arguments raised by respondent do not warrant extended discussion. Assuming, without deciding, that Family Court erroneously interpreted the effect and/or significance of the various IQ scores assigned to respondent by the relevant experts, we deem any error in this regard to be harmless, as Family Court plainly based its decision upon Wittman's and Horenstein's respective opinions that respondent met the statutory definition of mentally retarded. We reach a similar conclusion regarding the propriety of a hypothetical question posed to Seltenreich by Family Court. Family Court stated on the record that it would disregard the question at issue and, contrary to respondent's assertion, there is nothing in the record to suggest that Family Court failed to abide its own ruling in this regard. Respondent's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Cardona, P.J., Peters, Mugglin and Lahtinen, JJ., concur. Ordered that the orders are affirmed, without costs.