■ In the Matter of ALLEN DD. and Another, Alleged to be the Children of Mentally Retarded Parents. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ROGER DD., Appellant. (And Another Related Proceeding.) [793 NYS2d 220]—

Mercure, J.P. Appeals from an order of the Family Court of Clinton County (Lawliss, J.), entered April 30, 2004, which, inter alia, granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate respondents' children to be children of mentally retarded parents, and terminated respondents' parental rights.

Respondents are the biological parents of Tiffany, born in January 2000, and Allen, born in November 2001. Upon their consent in response to a petition alleging child abuse and neglect, respondents' two children came into the temporary custody of petitioner in September 2002, and they remained in foster care thereafter. Respondents, who concede that they are mildly mentally retarded, had regular, supervised visitation with Tiffany and Allen, and they continued to receive services from petitioner addressed to ameliorating respondents' parenting deficiencies. In October 2003, petitioner filed petitions seeking to terminate each respondent's parental rights on the ground of, among other reasons, mental retardation within the meaning of Social Services Law § 384-b (6) (b). Court-ordered psychological evaluations were conducted by Richard Liotta and, in April 2004, a fact-finding hearing was held. Thereafter, Family Court granted the petitions to terminate respondents' parental rights, committed the custody of the children to petitioner, and authorized petitioner to consent to the adoption of Tiffany and Allen. Respondents appeal, and we now affirm.

Mental retardation is statutorily defined as "subaverage intellectual functioning which originates during the developmental period and is associated with impairment in adaptive behavior to such an extent that if such child were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child as defined in the family court act" (Social Services Law § 384-b [6] [b]). Accordingly, the inquiry upon a petition to terminate parental rights pursuant to Social Services Law § 384-b (4) (c) is not limited to merely whether a parent has been clinically diagnosed as having mental retardation, but requires a determination of whether that mental retardation substantially impairs parenting abilities. Petitioner is required to demonstrate by clear and convincing evidence that respondents are presently, and for the foreseeable future will be, unable to provide proper and adequate care for their children by reason of respondents' mental retardation (*see Mat-*

ter of Donald W., 17 AD3d 728 [2005]; Matter of Deborah I., 6 AD3d 771, 772 [2004]; Matter of Tiffany S., 302 AD2d 758, 759 [2003], lv denied 100 NY2d 503 [2003]).

Respondents challenge Family Court's conclusion that they were not then, or would not become in the foreseeable future, able to adequately care for their children. While there was evidence that each respondent had made improvements in some areas in recent months, there was abundant evidence of deficiencies in each respondent's adaptive behavior, and the record contains specific examples of how those deficiencies are manifested in parenting situations. It was shown that respondent Roger DD. (hereinafter the father) is slow in processing information and limited in his ability to make decisions independently or quickly. Respondent Susan F. (hereinafter the mother) was shown to have problems with anger management that affected her ability to tolerate normal childish behavior and to moderate her responses thereto. Her ability to plan and to anticipate problems is deficient, and she was also shown to have difficulty attending to more than one thing at a time. There was also evidence that each respondent's acquisition of new skills was slow, and that both had difficulty generalizing and applying newly-acquired parenting skills. In our view, Family Court's conclusion that each respondent individually was presently unable to provide proper and adequate care, and that neither respondent would become able to provide such care in the foreseeable future, is supported by clear and convincing evidence.

The father contends that Family Court erred in failing to consider whether respondents, together, could adequately care for their children notwithstanding their inability to do so individually. We agree with the father that Social Services Law § 384-b (4) (c) does not preclude Family Court from considering whether two mentally retarded parents could, as a parental team, provide proper and adequate care for their children. The statute does not expressly prohibit such consideration and, indeed, by its use of the plural term "parents," appears to contemplate it (Social Services Law § 384-b [4] [c]). Considering the joint ability of two involved parents is manifestly distinguishable from those situations in which a single mentally retarded parent would require constant supervision by nonparental entities (see Matter of Deborah I., supra at 773; Matter of Tiffany S., supra at 760; Matter of Tonya Louise M., 91 AD2d 868, 869 [1982]).

Nevertheless, on the facts of this case, we will not disturb Family Court's determination that these respondents together would not be able to provide adequate care for their children.

While respondents' relative strengths and weaknesses are complimentary and they are more capable together than alone, any evidence tending to support a finding that respondents could parent adequately together was extremely guarded and conditioned upon future growth and development of respondents' parenting skills. There was evidence that to provide adequate care, respondents would have to be together with the children literally 24 hours a day, a condition that appears unlikely to be fulfilled given the mother's plan to gain employment outside the home while leaving the children in the sole care of the father. Moreover, the court's finding that respondents' relationship was unstable finds considerable support in the record.

The mother's contention that Family Court erred by allowing the opinions of the court-appointed evaluator to supplant the court's judgment is without merit. The court was entitled to rely upon petitioner's expert (*see Matter of St. Pierre v Burrows*, 14 AD3d 889, 890-891 [2005]), especially in the absence of opposing expert testimony (*see Matter of Joyce T.*, 65 NY2d 39, 46 [1985]; *Matter of Donald W., supra; Bains v Bains*, 308 AD2d 557, 558 [2003]), and was entitled to draw adverse inferences from respondents' failure to testify on their own behalf (*see Matter of Shawna U.*, 277 AD2d 731, 733 [2000]; *see also Matter of Damion S.*, 300 AD2d 1039, 1040 [2002]). In addition to relying upon the testimony of Liotta—who was vigorously cross-examined by counsel for the mother—Family Court expressly relied upon all of the witnesses presented by petitioner and the mother alike. Notably, the testimony of no witness departed materially from that of any other, and any determinations of credibility and weight were made within Family Court's province (*see Matter of St. Pierre v Burrows, supra* at 890 n; *Matter of Cheryl YY.*, 302 AD2d 632, 634 [2003]). To the extent that respondents' objections to the substance of Liotta's report survive a waiver flowing from respondents' unqualified stipulation to its admission into evidence (*see Matter of Tiffany S., supra* at 761), we are unpersuaded that Liotta's evaluation was perfunctory (*see Matter of Christopher A.B.*, 289 AD2d 1013 [2001]) or otherwise fatally flawed. In sum, we conclude that Family Court did not blindly adhere to Liotta's report and, further, that its decision is supported by clear and convincing evidence.

We have considered respondents' remaining arguments and find them to be without merit.

Crew III, Mugglin, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, without costs.