In the Matter of WILLIAM W. and Others, Alleged to be Children of a Mentally Retarded Parent. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; LINDA X., Appellant. [803 NYS2d 722]—

Mercure, J. Appeal from an order of the Family Court of Columbia County (Czajka, J.), entered March 11, 2005, which

granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's children to be children of a mentally retarded parent, and terminated respondent's parental rights.

Following a fact-finding hearing, Family Court sustained a petition seeking termination of respondent's parental rights based upon her mental retardation, finding that respondent lacks the minimum cognitive ability to parent a child (*see* Social Services Law § 384-b [4] [c]; [6] [b]). Upon appeal, respondent does not challenge the finding that she is mentally retarded and, as a result, unable to properly care for her three children, born in 1988, 1991 and 1994. Respondent further concedes that there is no statutory requirement for a dispositional hearing following a finding of mental retardation (*see Matter of Joyce T.*, 65 NY2d 39, 49-50 [1985]). Respondent contends, however, that Family Court abused its discretion in failing to hold a dispositional hearing to examine options for her to maintain continued contact with her children, such as an open-adoption arrangement and long-term foster care or guardianship for the children. In this vein, the Law Guardian asserts that we must remit for further proceedings to explore options for respondent's visitation with the children. We disagree.

Initially, with respect to open adoption, " '[a]lthough adoptive parents are free, at their election, to permit contacts between the adopted child and the child's biological parent,' section 384-b of the Social Services Law does not authorize the courts to *order* postadoption visits" (*Matter of April S.*, 307 AD2d 204, 204 [2003], *lv denied* 1 NY3d 504 [2003], quoting *Matter of Gregory B.*, 74 NY2d 77, 91 [1989]; *see Matter of Alexis S.D.*, 7 AD3d 359, 360 [2004]; *Matter of Lovell Raeshawn McC.*, 308 AD2d 589, 590-591 [2003]; *cf. Matter of Jacob*, 86 NY2d 651, 666-667 [1995]).* Turning to respondent's argument that long-term foster care or guardianship should have been considered by Family Court, respondent is correct that "a permanent severance of a parent-child relationship, even when a child has been in prolonged foster care, is not always beneficial to the child" (*Matter of Michael E.*, 241 AD2d 635, 638 [1997]). Nevertheless, foster care or guardianship is not: "a desired goal for the long, indefinite duration, because prolonged foster care is not in a

---

* We note that Family Court took a recess to give the parties an opportunity to enter into an agreement permitting respondent to visit the children. There is no evidence in the record regarding why the parties declined to enter into such a stipulation. Moreover, although Family Court offered the parties the opportunity to present evidence related to disposition, the parties declined to do so.

child's best interests. . . . In connection with parental termination, in this State, [such] care is viewed as a temporary way station to adoption or return to the [biological] parents, not the purposeful objective for a permanent way of life" (*Matter of Joyce T., supra* at 47-48).

Here, given respondent's partial responsibility for the sexual abuse of her daughter by the father, her admission that she is not able to protect the children from the father and the evidence that these limitations could not be overcome through services or treatment, as well as the fact that adoption remains a feasible option for the two youngest children, we agree with Family Court that termination of respondent's parental rights is warranted with respect to her daughter and youngest son (*see Matter of Dale T.*, 236 AD2d 744, 745 [1997]; *cf. Matter of Michael E., supra* at 638). Inasmuch as the oldest child, however, has minimal prospects of placement in an adoptive home that could meet his needs and "there is no danger that respondent's continued parental relationship with [that child] will be detrimental to him or interfere with the development of a permanent, adoptive relationship," we conclude that terminating respondent's parental rights with respect to the oldest child is not in his best interests (*Matter of Michael E., supra* at 638 [citation omitted]).

Cardona, P.J., Spain, Carpinello and Lahtinen, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as terminated respondent's parental rights with respect to William W., and, as so modified, affirmed.