■ In the Matter of MELISSA LL., and Another, Alleged to be Children of Mentally Retarded Parents. CHEMUNG COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; LINDA LL., Appellant. (And Another Related Proceeding.) [817 NYS2d 407]—

---

Rose, J. Appeals (1) from an order of the Family Court of Chemung County (Brockway, J.), entered May 23, 2005, which, inter alia, granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate respondents' children to be the children of mentally retarded parents, and terminated respondents' parental rights, and (2) from an order of said court, entered July 6, 2005, which revoked respondents' visitation rights.

Petitioner filed separate petitions, based on mental retardation, to terminate the parental rights of respondents, the mother and father of two children born in 1992 and 1993. Family Court granted the petitions and terminated respondents' parental rights following combined fact-finding and dispositional hearings that included the testimony of respondents and three psychologists. Both respondents appeal from the resulting court order.*

Family Court relied on the expert testimony and reports of Michael Morrongiello, a court-appointed psychologist, in finding that respondents were mentally retarded as defined in Social Services Law § 384-b (6) (b). Based upon his testing and interviews, Morrongiello found the father to have a full scale IQ of 70, with a low verbal IQ of 63 that adversely affected his ability to parent. Morrongiello concluded that the father is mildly retarded, is impulsive, has unresolved anger management issues and does not acknowledge his problems. Based on the testing conducted by the mother's psychologist and his own interviews, Morrongiello found the mother to have a full scale IQ of 54 and to be moderately to mildly retarded. He further opined that the mother has very limited ability to learn new skills and apply them to new situations, and there is no likelihood that her

---

* Although the mother also appeals from the order terminating any contact with her children following termination of her parental rights, she does not address this issue in her brief and, thus, we deem it abandoned (see Matter of Senator NN., 305 AD2d 819, 820 [2003]).

condition or capacity will improve in the foreseeable future. Morrongiello concluded that, even with appropriate supervision, neither parent would be able to raise children of normal intelligence, let alone children with special needs such as respondents' children here. In addition, petitioner's caseworkers testified that the father had made very little progress in dealing with his problems and, while the mother had made some progress through counseling, it was unlikely that she would complete protective parenting classes before the children become 18 years old.

This evidence clearly and convincingly established that respondents are mentally retarded and, based on that condition, presently are, and will for the foreseeable future be, unable to adequately care for their children (*see* Social Services Law § 384-b [4] [c]; *Matter of Donald W.*, 17 AD3d 728, 728-729 [2005], *lv denied* 5 NY3d 705 [2005]; *Matter of Cheryl YY.*, 302 AD2d 632, 634 [2003]; *Matter of Karen Y.*, 156 AD2d 823, 826 [1989], *lv denied* 75 NY2d 710 [1990]). While each respondent's expert states that it is possible that he or she would be "able to properly parent the children in the future," it is settled law that " '[t]he mere possibility that respondent[s'] condition, with proper treatment, could improve in the future is insufficient to vitiate Family Court's conclusion' " (*Matter of Joseph T.*, 220 AD2d 893, 895 [1995], quoting *Matter of Vaketa Y.*, 141 AD2d 892, 893 [1988]; *see Matter of Deborah I.*, 6 AD3d 771, 773 [2004]).

In deciding whether to keep children in long-term foster care or sever the parent-child relationship, we recognize that long-term foster care is not in the child's best interests as it is "viewed as a temporary way station to adoption or return to the natural parents, not the purposeful objective for a permanent way of life" (*Matter of Joyce T.*, 65 NY2d 39, 48 [1985]; *see Matter of William W.*, 23 AD3d 735, 736-737 [2005]). Here, Family Court acknowledged respondents' love for the children, but reluctantly found termination of their parental rights to be in the children's best interests because Morrongiello's testimony showed that it was highly unlikely that respondents' conditions would ever improve sufficiently to enable them to properly care for the children. In addition, at the time of the hearing, the children had been in foster care for approximately five years. While the law guardian advocates continued contact between the children and respondents, Family Court correctly declined to award visitation after termination of their parental rights (*see Matter of April S.*, 307 AD2d 204, 204 [2003], *lv denied* 1 NY3d 504 [2003]).

Finally, we find no merit in the father's contention that petitioner failed to demonstrate that his mental retardation originated during his developmental period (*see* Social Services Law § 384-b [6] [b]). This claim is unpreserved and, in any event, the record bears sufficient proof that the father's retardation originated from head trauma due to abuse sustained when he was a young child (*see Matter of Deborah I., supra* at 773).

Mercure, J.P., Peters, Spain and Kane, JJ., concur. Ordered that the orders are affirmed, without costs.