■ In the Matter of HENRY W., Alleged to be the Child of a Mentally Retarded Parent. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; HENRY MM., Appellant. (Proceeding No. 1.) In the Matter of HENRY W., Alleged to be the Child of a Mentally Ill Parent. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; APRIL X., Appellant. (Proceeding No. 2.) [818 NYS2d 348]—

Lahtinen, J. Appeals from two orders of the Family Court of Columbia County (Czajka, J.), entered September 8, 2005, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate respondents' child to be the child of mentally ill or mentally retarded parents, and terminated respondents' parental rights.

Respondents Henry MM. (hereinafter the father) and April X.

(hereinafter the mother) are the unmarried biological parents of a child, Henry W. (born in 2004). The child was removed from the mother's care the day after his birth, petitioner filed a neglect petition against her, Family Court found the child to be neglected and we recently affirmed that determination(*see Matter of Henry W.*, 30 AD3d 695 [2006]). Petitioner commenced separate proceedings against respondents in February 2005 (the father) and March 2005 (the mother) seeking to terminate the parental rights of each. The ground asserted in proceeding No. 1 (the father) was mental retardation and in proceeding No. 2 (the mother) was mental illness. Following fact-finding hearings, Family Court granted both petitions and terminated respondents' parental rights, freeing the child for adoption. The mother and the father each appeal.

Parental rights can be terminated and a child freed for adoption if "[t]he parent . . . , whose consent to the adoption of the child would otherwise be required . . . , [is] presently and for the foreseeable future unable, by reason of mental illness or mental retardation, to provide proper and adequate care for a child" (Social Services Law § 384-b [4] [c]; *see Matter of Joyce T.*, 65 NY2d 39, 48 [1985]; *Matter of Alexis X.*, 23 AD3d 945, 946 [2005], *lv denied* 6 NY3d 710 [2006]; *Matter of Allen DD.*, 17 AD3d 740, 741-742 [2005], *lv denied* 5 NY3d 704 [2005]). Mental retardation is defined as "subaverage intellectual functioning which originates during the developmental period and is associated with impairment in adaptive behavior to such an extent that if [the] child were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child" (Social Services Law § 384-b [6] [b]; *see Matter of Allen DD., supra* at 741) and " 'mental illness' means an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking or judgment to such an extent that if [the] child were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child" (Social Services Law § 384-b [6] [a]; *see Matter of Ashley L.*, 22 AD3d 915, 915-916 [2005]). Each requires proof not only of the underlying condition afflicting the parent, but also that such condition creates a current and future danger of the child not receiving proper and adequate care, and petitioner bears the burden of proof by clear and convincing evidence (*see Matter of Michael WW.*, 29 AD3d 1105, 1106 [2006]; *Matter of Allen DD., supra* at 741-742; *Matter of Cheryl YY.*, 302 AD2d 632, 633 [2003]).

The evidence presented in the proceeding against the mother included testimony by David Horenstein, a clinical psychologist

who performed an in-depth examination of her in 2000, and John Wapner, a psychologist who conducted a two-session evaluation in 2005. Horenstein opined that she suffered from, among other things, schizophrenia of the paranoid type, that she was not significantly aware of her illness and resisted medicine to improve her condition, and that her condition prevented her from being able to adequately care for the child. Wapner stated that she suffered from schizotypal personality disorder and, while he stopped short of diagnosing her with paranoid schizophrenia, he related that she exhibited some symptoms consistent with that disorder. She had made little progress from the time Horenstein evaluated her until Wapner's evaluation. Similar to Horenstein, Wapner opined that her mental illness afflicted her interactions with others and impaired her decision-making ability, she manifested paranoid and delusional thinking, and she resisted treatment. He concluded that her mental illness prevented her from adequately parenting the child, her condition was unlikely to improve and returning the child to her would place him in danger of being neglected. Upon review of the record, it is readily apparent that petitioner satisfied its burden of proof regarding the mother and we are unpersuaded that Family Court's determination should be set aside.

The proof regarding the father is closer. Again, Horenstein testified, and he based his opinions on a July 2004 evaluation as well as the father's efforts to parent the child at various visitations following that initial evaluation up to the time of a second evaluation in February 2005. Horenstein placed the father's IQ at about 65, which he characterized as mildly retarded. He found no evidence of psychiatric disturbance and observed that the father had managed his life well despite his mental infirmity, including holding consistent employment and acquiring a home. At the time of the July 2004 evaluation, Horenstein recommended brief unsupervised visits and stated that the father should be given the opportunity to demonstrate that he was capable of caring for the child. The father's efforts in such regard, however, were not particularly successful. A family specialist who worked with the father for six months explained that, while he made efforts at parenting and could learn a specific skill, he was unable to adapt to the child's changing developmental needs and had to be prompted to attend to the child's basic needs. Based upon review of the caseworker's notes and his second evaluation in February 2005, Horenstein concluded that the father could not parent the child independently and that his impaired behavior would place the child at risk of harm. While severing this father's parental rights is, as the Court of Appeals has aptly described, a "painful process"

and "involves no wrongdoing or fault on [his] part" (*Matter of Joyce T., supra* at 49), we nevertheless find that the record supports Family Court's determination (*see generally Matter of Allen DD., supra* at 742-743).

The remaining issues raised by respondents do not require extended discussion. Family Court did not abuse its discretion in the mother's proceeding by not allowing general character witnesses who had no expertise regarding the germane issue of whether she suffered from a mental illness (*see generally Matter of Alexis X., supra* at 946). Nor was it an abuse of discretion in the father's proceeding, after finding mental retardation, to decline to conduct a formal dispositional hearing (*see Matter of Tiffany S.,* 302 AD2d 758, 761 [2003], *lv denied* 100 NY2d 503 [2003]). Family Court's decision to terminate the parents' rights and free the child for adoption was advocated by the Law Guardian and, under the circumstances of this case, was in the best interest of the child (*see Matter of Joyce T.,* 65 NY2d 39, 49-50 [1985], *supra; Matter of Elizabeth Q.,* 126 AD2d 905, 906-907 [1987]).

Cardona, P.J., Mercure, Carpinello and Mugglin, JJ., concur. Ordered that the orders are affirmed, without costs.