In the Matter of PETER GG. and Others, Alleged to be the Children of a Mentally Ill or Mentally Retarded Parent. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; EVA GG., Appellant. [822 NYS2d 668]—

Mugglin, J. Appeal from an order of the Family Court of Columbia County (Nichols, J.), entered November 25, 2005, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's children to be the children of a mentally ill parent, and terminated respondent's parental rights.

Respondent is the mother of Peter (born in 1988), Jonathan (born in 1989) and Florence (born in 1991). While it appears that Florence has no significant mental illness or defect, both boys are developmentally disabled and have been in foster care since May 2002. Florence has been in foster care since May 2003. Petitioner commenced this proceeding against respondent, as well as a separate one against the children's father from whom respondent is separated, alleging that she was unable to properly care for the children by reason of mental illness and/or retardation, and, therefore, sought termination of her parental rights pursuant to Social Services Law § 384-b.* Family Court determined that petitioner failed to prove mental retardation, but it did establish that respondent has a mental illness that would prevent respondent from providing adequate care in the foreseeable future and terminated her parental rights. On this appeal, respondent makes three arguments.

---

* Although Family Court found the father currently unable to parent the children, it also found that petitioner failed to show that he could not adequately address his mental retardation or illness and dismissed the petition with respect to him.

First, respondent asserts that petitioner failed to prove mental illness by clear and convincing evidence because the psychologist who interviewed respondent performed no tests, instead forming his opinion, in part, from tests previously performed by another psychologist, who testified in prior proceedings. As these tests were not current, respondent argues that they should not have been relied on. We are unpersuaded, not only because respondent prevented new tests from being performed, but also because the observations and findings of both psychologists were markedly similar. Moreover, petitioner has the right "to submit other psychiatric, psychological or medical evidence" (Social Services Law § 384-b [6] [e]) in addition to an expert's direct testimony.

Respondent's second and third arguments are related. She argues that it was error to terminate her parental rights without freeing the children for adoption, and terminating her parental rights did not further the best interests of the children as the result is long-term foster care for them. While Social Services Law § 384-b clearly encourages placing children in permanent homes, its language does not prohibit termination of parental rights when the children are not freed for adoption. Social Services Law § 384-b (1) (b) states that adoption should be considered only when all "positive, nurturing parent-child relationships no longer exist," a circumstance not present here as Family Court found the father still had the potential to become a successful parent. Moreover, courts have terminated parental rights even though "readoptive homes [have] not been found" (*Matter of Roselyn Mercedes F.*, 238 AD2d 222, 222 [1997]; *see Matter of David T.*, 268 AD2d 309, 309 [2000]; *Matter of Tyesha W.*, 259 AD2d 349, 349 [1999]) and "there is no evidence that adoption is contemplated" (*Matter of Kathryn P.*, 225 AD2d 1064, 1064 [1996]). Here, long-term foster care appears to be the only reasonable option given the age of the children, the fact that the boys probably are incapable of giving informed consent and given the court's findings with respect to the mental capacity of the parents. Moreover, respondent's reliance on *Matter of Michael E.* (241 AD2d 635 [1997]) is misplaced. While we did hold there that dismissal of a termination proceeding was proper partly due to "the likelihood of [the child] never being adopted" (*id.* at 636), that case is distinguishable because of the lack of evidence that a continued relationship with the parent would harm the child. The evidence here is all to the contrary.

Crew III, J.P., Carpinello, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, without costs.