[8 NYS3d 384]

In the Matter of HEAVEN A.A., Also Known as HEAVEN A. SCO FAMILY OF SERVICES, Respondent; TYRONE W., Appellant, et al., Respondent.

Second Department, May 6, 2015

## APPEARANCES OF COUNSEL

*Rayaaz N. Khan*, Jamaica, for appellant.

*Carrieri & Carrieri, P.C.*, Mineola (*Ralph R. Carrieri* of counsel), for respondent.

*Seymour W. James, Jr.*, New York City (*Tamara A. Steckler* and *Claire V. Merkine* of counsel), Attorney for the Child.

## OPINION OF THE COURT

DILLON, J.

We are asked to address whether a Family Court may render a determination that a putative father has abandoned a child so as to free the child for adoption, if there is not first a threshold finding that the putative father is, in fact, the father of the child. For the reasons set forth below, we conclude that where paternity is not ascertained in fact or by law, the Family Court may not conclusorily find that a respondent is not a "consent father," or that his consent, while otherwise required, has been forfeited by reason of his abandonment of the child.

### Facts

The petitioner, SCO Family of Services, filed a petition on October 5, 2011 to terminate the parental rights of the respondent mother, Stephanie A., on the ground of permanent neglect, and to terminate the parental rights of the respondent putative father, Tyrone W. (hereinafter the appellant), on the ground of abandonment. There was one child at issue, Heaven, who was born on February 22, 2008. The petition specifically

alleged that the appellant's consent to the child's adoption was not required under Domestic Relations Law § 111-a and Social Services Law § 384-c, because he was never married to the mother, had maintained no substantial and continuous contact with the child, had not claimed paternity, was not named on the child's birth certificate, was not openly living with the child, and was not listed in the putative father registry.

Due to the appellant's incarceration, the petition was not served on him until early 2013. The appellant eventually appeared in the Family Court, Queens County, on April 2, 2013, with court-appointed counsel. The Family Court suggested that the appellant and his attorney discuss a surrender of parental rights, explaining that if parental rights were terminated after a trial, there would be no provision for visitation with the child. After having that discussion with his counsel, the appellant instead requested a DNA test to determine paternity. The request was denied, and the matter was adjourned to May 29, 2013 for an estoppel hearing.

On May 29, 2013, the appellant again requested a DNA test, which the Family Court denied. The court explained that, subject to a hearing, the appellant's parental rights could be terminated regardless of whether he was the biological father. The Family Court also explained that there would be no finding of abandonment if the appellant agreed to surrender his parental rights voluntarily, but the appellant refused that offer.

Thereafter, a hearing commenced. The case worker, Robin Torres, testified that the child had been placed into foster care shortly after she turned one year old, and that during the six months preceding the filing of the petition, the appellant had no contact with either the child or the petitioner and had provided no support for the child. During cross-examination, Torres was asked the basis for the petitioner's belief that the appellant was the father, and she responded that the appellant was listed "in the [Putative Father] Registry." However, no documentation from the putative father registry was proffered. The foster mother, Ketsie R., testified and corroborated that the appellant had no contact with the child during the six months preceding the filing of the petition.

The appellant testified that he was unaware of the child's existence until he was served with a copy of the petition while he was incarcerated. Although he stated that his paternity was a possibility, he was not sure, as the mother never told him that

she was pregnant, and he never observed her to be in that condition. The appellant resisted any abandonment finding for fear that its negative stigma could impact his four children, who were residing with his aunt.

At the conclusion of the testimony, the appellant's counsel argued that the petitioner failed to meet its initial burden of establishing that the appellant was the child's father, and that Torres' testimony that the appellant was listed in the putative father registry was not documented. In contrast, the petitioner's counsel argued that the standards for abandonment did not require proof of paternity and, in any event, the appellant conceded that he could be the father but had failed to meet his own obligation of determining whether or not that was the case.

The Family Court held in favor of the petitioner. It reasoned that, pursuant to established case authority, the appellant bore the responsibility of confirming whether he was the father of the child born of the mother with whom he had sexual relations. Having failed to fulfill that responsibility, the court found that the father had abandoned the subject child.

The dispositional hearing that followed is not directly at issue on appeal. The Family Court terminated the parental rights of both the mother and the appellant, and determined that it was in the child's best interests to remain in foster care. An order of disposition reflecting the foregoing was executed on July 16, 2013 and is the subject of this appeal.

For the reasons set forth below, the order of disposition is reversed insofar as appealed from, and the petition is dismissed insofar as asserted against the appellant.

## Legal Analysis

The appellant maintains that before the Family Court could consider the issue of abandonment, the petitioner was required to establish that he was the father of the subject child. The appellant further argues that the Family Court should have granted his requests for a DNA test to prove paternity. Finally, the appellant argues that the Family Court's finding that he had abandoned the child is at odds with the petitioner's assertion that the appellant was not a person whose consent was required to free the child for adoption. The attorney for the child agrees with the appellant, and contends that establishing paternity is a threshold requirement for terminating parental rights based upon abandonment.

The petitioner asserts that it only needed to prove the appellant's abandonment of the child, without regard to proof of whether the appellant was the child's father. The petitioner maintains that the appellant's consent was not needed to free the child for adoption, since the appellant had no meaningful contact with the child, and that it was in the child's best interests to be freed for adoption.

Social Services Law § 384-b provides that guardianship and custody of a child may be transferred to a social services agency to free the child for adoption, if, inter alia, the parent or parents, whose consent to the adoption of the child would otherwise be required, abandoned the child for the six-moth period immediately preceding the filing of the petition (*see* Social Services Law § 384-b [4] [b]). Abandonment, as it pertains to adoption, is conduct by the parent that evinces a purposeful ridding of parental obligations and the forgoing of parental rights (*see Matter of Corey L v Martin L*, 45 NY2d 383, 391 [1978]; *Matter of Medina Amor S.*, 50 AD3d 8, 15 [2008]; *Matter of Brianna K.J.W.*, 15 AD3d 880 [2005]). The burden of proving abandonment is on the presentment agency by a clear and convincing evidence standard (*see Matter of Annette B.*, 4 NY3d 509, 514 [2005]; *Matter of Cheyenne S.*, 20 AD3d 748, 748-749 [2005]; *Matter of Andrea A.*, 12 AD3d 991 [2004]), although proof of a parent's failure to visit or communicate with the child for the requisite six-month period creates a rebuttable presumption of abandonment (*Matter of Isaiah F.*, 55 AD3d 1012, 1013 [2008]; *Matter of Maliq M.*, 48 AD3d 1251 [2008]; *Matter of Isaiah Johnathan S.*, 33 AD3d 459 [2006]; *Matter of Anthony M.*, 195 AD2d 315, 315-316 [1993]).

The Social Services Law expressly incorporates Domestic Relations Law § 111, which provides that the "consent" of the father of a child born out of wedlock is required for an adoption if the father has "maintained substantial and continuous or repeated contact with the child," such as by paying child support, visiting the child, or communicating with the agency or person providing care and custody of the child (Domestic Relations Law § 111 [1] [d]; *see* Social Services Law § 384-b [4]). However, consent is not required if the parent is unable to adequately care for the child as a result of mental illness or mental retardation (*see* Social Services Law § 384-b [4] [c]; *Matter of Timothy Reynaldo L.M. [Frances M.]*, 89 AD3d 542 [2011]; *Matter of Alyssa Genevieve C. [Laura Marie McG.]*, 79

AD3d 507 [2010]; *Matter of Berman [Becky A. H.]*, 49 AD2d 327 [1975]).

Conversely, the father's consent to the adoption of a child born out of wedlock is not required under five statutorily defined circumstances:

1. the father has evinced an intent to forgo parental rights by failing to visit or communicate with the child for six months;

2. the father has surrendered the child to an authorized agency;

3. a guardian has been appointed for the father's child pursuant to Social Services Law § 384-b;

4. the father is unable to provide proper care for the child by reason of mental illness or mental retardation; and

5. the father has executed an instrument denying paternity of the child (*see* Domestic Relations Law § 111 [2] [a]-[e]; *Matter of Angelina J. [Frantz J.]*, 112 AD3d 932 [2013]).

These statutory circumstances for denying consent status for unwed fathers must be established by clear and convincing evidence (*see Matter of Angelina J. [Frantz J.]*, 112 AD3d at 932; *Matter of Janelle C. [Sean R.]*, 88 AD3d 787 [2011]; *Matter of Sharissa G.*, 51 AD3d 1019, 1020 [2008]; *Matter of Taylor R.*, 290 AD2d 830 [2002]).

A consent father is entitled to notice of adoption proceedings pursuant to Domestic Relations Law § 111 (3) (a) and termination of parental rights proceedings pursuant to Social Services Law § 384-c. Specifically, pursuant to Social Services Law § 384-c (1), persons entitled to notice of a Social Services Law § 384-b proceeding include any person who has:

1. been adjudicated by a court in this state to be the father of the child;

2. been adjudicated by a court of another state or territory to be the father of the child;

3. timely filed an unrevoked notice of intent to claim paternity of the child pursuant to Social Services Law § 372-c;

4. been recorded on the child's birth certificate as the father;

5. is openly living with the child and the child's mother at the time the proceeding is initiated or at the time the child was placed in the care of an authorized agency, and who holds himself out as the child's father;

6. has been identified as the father by the mother in a sworn statement;

7. was married to the mother within six months subsequent to the birth of the child; or,

8. has filed an instrument acknowledging paternity of the child with the putative father registry (*see* Social Services Law § 384-c [2]).

All four Judicial Departments have held, in sum and substance, that proceedings to terminate parental rights on the ground of abandonment are unnecessary where the consent of the person whose parental rights are being terminated is not required. In other words, if an out-of-wedlock father does not qualify for consent rights in connection with a proceeding pursuant to Social Services Law § 384-b to terminate parental rights, there is no need for or purpose served by a proceeding to terminate parental rights on the ground of abandonment (*see Matter of Daryl D.*, 6 AD3d 1196 [2004]; *Matter of Carrie GG.*, 273 AD2d 561, 562 [2000]; *Matter of Kasiem H.*, 230 AD2d 796, 797 [1996]; *Matter of Christy R.*, 183 AD2d 434, 434 [1992]; *Matter of Catholic Child Care Socy. of Diocese of Brooklyn*, 112 AD2d 1039, 1040-1041 [1985]).*

Here, the appellant consistently disputed whether he was the child's father, sought DNA testing, and expressed concern that the stigma of an abandonment could negatively impact his relationship with his four children, who apparently resided with his aunt. The petitioner, on the other hand, provided no proof of the appellant's paternity. Indeed, while Torres testified that the appellant was listed as the child's father in the putative father registry, the petition expressly alleged that the father was not listed in the putative father registry. The child's birth certificate did not name the appellant as the father, no sworn statement from the mother identified the appellant as the father, and the appellant's paternity has never been adjudicated by any court.

The petitioner contends, and the Family Court found, that it was under no obligation to prove the appellant's paternity, as it was his obligation to discover and protect his paternal rights. The petitioner relies upon *Matter of Robert O. v Russell K.* (173

---

* We note three appellate cases in which the courts simultaneously found both that the fathers abandoned the child, and that the father's consent to adoption was not required (*Matter of Yamilette M.G. [Marlene M.]*, 118 AD3d 698 [2014]; *Matter of Thailique Nashean S. [Sean L.]*, 105 AD3d 428 [2013]; *Matter of Jayquan J. [Clint J.]*, 77 AD3d 947 [2010]). However, these cases, while discussing issues in the alternative, do not hold that abandonment is a condition precedent to finding that a father is not a consent father. Notably, in all three cases, there appears to be no dispute as to paternity.

AD2d 30 [1992], *affd* 80 NY2d 254 [1992]), wherein the father was not aware of the mother's pregnancy until 17 months after the birth and 10 months after an adoption of the child had been finalized. Both this Court and the Court of Appeals noted that fatherhood under Domestic Relations Law § 111, for purposes of notice and adoptive consent, was not solely a matter of biology but also requires the acceptance of various parental responsibilities (*see Matter of Robert O. v Russell K.*, 80 NY2d at 264-265; *Matter of Robert O. v Russell K.*, 173 AD2d at 35). The Court of Appeals specifically reasoned that the prompt assertion of parental responsibilities should be measured not from the father's awareness of the child, but from the beginning of the child's life (*see Matter of Robert O. v Russell K.*, 80 NY2d at 264). The father in *Matter of Robert O.* was held to have forfeited his right to contest the subject adoption proceeding as he had failed to earlier and promptly assert his paternal rights by learning of the child and developing a protectable custodial relationship.

*Matter of Robert O.* is distinguishable from this proceeding, however, as there was no question that the unwed father in *Robert O.* was, in fact, the biological father of the child. Here, in contrast, the appellant challenged his paternity and such paternity was never established by the petitioner. Thus, the appellant is not attempting to assert parental rights as much as he is attempting to ascertain whether he has any parental rights to assert in the first instance.

We hold that the Family Court should have granted the appellant's request for DNA testing to determine if he was the biological father of the child. If the results of such testing demonstrated that the appellant was not the child's biological father, then there would have been no need to commence a termination of parental rights proceeding against him. However, if the results of the DNA testing demonstrated that the appellant was the biological father, they would support the Family Court's conclusion that he is not a "consent father" under Domestic Relations Law § 111 (1) (d), and *Matter of Robert O.*, or that his consent would otherwise be required but his right thereto has been forfeited by his abandonment of the child pursuant to Social Services Law § 384-b (4) (b). Neither determination can be properly reached absent the DNA evidence, which the appellant had requested. Indeed, without the benefit of DNA testing, the appellant will be subject to the stigma of an abandonment finding as to a child for whom he

may not have any parental rights or responsibilities. Moreover, such finding might negatively affect the appellant's status in potential future court proceedings (*see Matter of Tyler S. [Melissa J.]*, 103 AD3d 731, 732 [2013]; *see also Matter of Lee TT. v Dowling*, 87 NY2d 699, 709 [1996]). Accordingly, where, as here, paternity is at issue, courts may not conclusorily find that a putative father is not a consent father or that his consent, while otherwise required, was forfeited by abandonment. Courts must instead render a threshold factual determination of whether the putative father is, in fact, the biological father of the child, and then proceed accordingly.

The parties' remaining contentions either are without merit or have been rendered academic in light of our determination.

Accordingly, the order of fact-finding and disposition is reversed insofar as appealed from, that branch of the petition which was to terminate Tyrone W.'s parental rights on the ground of abandonment is denied, and the proceeding is dismissed insofar as asserted against Tyrone W.

ENG, P.J., DUFFY and BARROS, JJ., concur.

Ordered that the order of fact-finding and disposition is reversed insofar as appealed from, on the law and the facts, without costs or disbursements, that branch of the petition which was to terminate Tyrone W.'s parental rights on the ground of abandonment is denied, and the proceeding is dismissed insofar as asserted against Tyrone W.