■ In the Matter of JAKE W.E. SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JONATHAN S., Appellant. [19 NYS3d 70]—

Appeal from an order of fact-finding and disposition of the Family Court, Suffolk County (David Freundlich, J.), dated June 27, 2014. The order, after a fact-finding hearing, found that the father abandoned the subject child, terminated the father's parental rights, and transferred guardianship and custody of the subject child to the Suffolk County Department of Social Services for the purpose of adoption.

Ordered that the order is affirmed, without costs or disbursements.

To demonstrate that the father abandoned the subject child, the petitioner was required to establish by clear and convincing evidence that he "evince[d] an intent to forego his . . . parental rights and obligations" by failing to visit or communicate with the child or petitioner during the six-month period before the petition was filed (Social Services Law § 384-b [5] [a]; *see Matter of Heaven A.A. [Tyrone W.]*, 130 AD3d 10 [2015]; *Matter of Christopher C. [Sherwin C.]*, 111 AD3d 715 [2013]). "Intent is manifested by the parent['s] failure to visit the child or communicate with the child or the agency although able to do so and not prevented or discouraged from doing so by the agency" (*Matter of Julius P.*, 63 NY2d 477, 481 [1984]; *see Matter of Angela Simone S. [Simone M.]*, 107 AD3d 901 [2013]; *Matter of Jeremiah Kwimea T.*, 10 AD3d 691, 692 [2004]). Here, the petitioner met this burden. The subject child was born in September 2012, as a result of a single sexual encounter between the father and the mother. The father admitted that, sometime in August 2013, he was advised by the mother that he might be the father. Although the father had sufficient reason to believe that he might be the father, he failed to take any prompt action to assert or determine paternity, including registering as the putative father, requesting DNA testing, visiting the child, or paying support (*see Matter of Beverly EE. [Ryan FF.]*, 88 AD3d 1086, 1087 [2011]; *see also Matter of Robert O. v Russell K.*, 80 NY2d 254, 259 [1992]; *Matter of Raquel Marie X.*, 76 NY2d 387, 402-403 [1990]). The father's incarceration did not relieve him of his responsibility to maintain contact or communicate with the subject child or agency (*see Matter of Jerralynn R. Mc. [Scott Mc.]*, 114 AD3d 793, 794 [2014]; *Matter of Female F.*, 40 AD3d 993, 994 [2007]). Accordingly, the Family Court properly granted the petition to terminate the father's parental rights on the ground of abandonment.

The father's remaining contentions are without merit. Mastro, J.P., Rivera and Dickerson, JJ., concur.

Hinds-Radix, J., dissents, and votes to reverse the order appealed from, on the facts, and deny the petition to terminate the father's parental rights, with the following memorandum, in which Barros, J., concurs: A petition to terminate parental rights on the ground of abandonment may be denied where, despite evidence that the parent abandoned the child during the six-month period prior to the filing of the petition, the record nevertheless demonstrates that termination would not be in the best interests of the child (*see Matter of Arthur C.*, 66 AD3d 1009, 1010 [2009]). Here, my colleagues in the majority conclude that the father's failure to take prompt action to assert paternity after the mother informed him that he might be the child's father in the six months prior to the filing of the petition constituted abandonment. However, that finding does not mandate granting the petition to terminate parental rights where, as here, new facts arose after the filing of the petition, and after the issuance of the order appealed from, which demonstrate that termination of the father's parental rights is not in the child's best interests (*see Matter of Arthur C.*, 66 AD3d at 1010; *Matter of Samuel Fabien G.*, 52 AD3d 713 [2008]).

Once the petition was filed, the father notified the petitioner that his mother and sister were potential resources for the child. He requested a paternity test to determine his paternity, and, after the test was performed, he secured an order of filiation. After a fact-finding hearing, the Family Court found that the father abandoned the child, terminated his parental rights, and placed the child in the custody of the petitioner "for the purposes of adoption."

Although the Family Court terminated the father's parental rights, it did not terminate the mother's parental rights. Thus, terminating the father's parental rights did not foster any permanency goals or foster the adoption of the child. The child was ultimately returned to the mother with no legal father.

Moreover, there are no facts in this record which indicate that a relationship between the child and his father will be harmful to the child (*see e.g. Matter of Peter GG.*, 33 AD3d 1104 [2006]; *Matter of Michael E.*, 241 AD2d 635, 638 [1997]). Rather, at the fact-finding hearing, the father testified he was out of jail and drug free for 1½ years. Further, he noted that additional resources were available to him, in that his mother could help should he assume custody. The paternal grandmother testified that the petitioner never contacted her as a potential resource, and she was willing to assist the father in the care of the child, if he were awarded custody. It appears from this record that terminating the father's parental rights

would serve no purpose other than to sever any potential ties between the child and his father and paternal kindred.

In view of the foregoing, the petition to terminate the father's parental rights should be denied.